**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE STATE OF MISSOURI ex rel. | ) | |
| ERIC S.  SCHMITT, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No.   4:22-cv-00789-AGF |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF ST. LOUIS, et al. | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

### ANSWER OF DEFENDANTS AND COUNTERCLAIM OF COUNTERCLAIM PLAINTIFFS CITY OF ST. LOUIS AND DR. MATIFADZA HLATSHWAYO DAVIS

COME NOW the City of Saint Louis, the Honorable Darlene Green – Comptroller for the City of St. Louis, the Honorable Adam Layne – Treasurer for the City of St. Louis, and Dr. Matifadza Hlatshwayo Davis – Director of Health for the City of St. Louis (collectively, "Defendants") as well as Defendant/Counterclaim Plaintiffs City and Dr. Hlatshwayo Davis and state as follows:

### ANSWER

For their Answer to Plaintiff's Complaint (Doc. No. 6), Defendants deny everything not specifically admitted and, in particular, state as follows:

1.     Defendants admit only that this Complaint purports to seek a declaration that Board Bill 61 ("BB 61") violates Missouri state law.  Defendants otherwise deny the allegations in the complaint and deny any genuine, valid or legitimate claim for declaratory or injunctive relief as stated or alleged in paragraph 1 or in the Complaint.

2.     The allegations in paragraph 2 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in paragraph 2.

1

3.      In response to paragraph 3, Defendants admit only that paragraph 3 accurately recites a portion of § 188.205, RSMo. Defendants otherwise deny the allegations in paragraph 3.

4.      In response to paragraph 4, Defendants admit only that paragraph 4 accurately recites a portion of § 188.210, RSMo. Defendants otherwise deny the allegations in paragraph 4.

5.      In response to paragraph 5, Defendants admit only that paragraph 5 accurately recites § 188.215, RSMo. Defendants otherwise deny the allegations in paragraph 5.

6.      The allegations in paragraph 6 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

7.      Defendants admit only that the U.S. Supreme Court issued its decision in Dobbs v. Jackson Women's Health Organization, 597 U.S. ___, 142 S. Ct. 2228 (2022) on June 24, 2022. The remaining allegations in paragraph 7 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in the paragraph.

8.      Defendants admit the allegations in paragraph 8.

9.      Defendants admit only that paragraph 9 accurately recites a portion of § 188.010, RSMo. The remaining allegations in paragraph 9 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in the paragraph.

10.      The allegations in paragraph 10 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

11.      The allegations in paragraph 11 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

12.     Defendants admit only that HB 1596 was passed in 1986.   The remaining allegations in paragraph 12 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in the paragraph.

13.     Defendants admit only that paragraph 13 accurately recites portions of § 188.205. The remaining allegations in paragraph 13 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in the paragraph.

14.     The allegations in paragraph 14 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

15.     Defendants deny the allegations in paragraph 15.

**JURISDICTION AND VENUE**

16.     Defendants admit only that jurisdiction is proper in both the United States District Court for the Eastern District of Missouri and the Twenty-Second Judicial Circuit of Missouri. The remaining allegations constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in the paragraph.

17.     Defendants admit only that venue is proper in both the United States District Court for the Eastern District of Missouri and the Twenty-Second Judicial Circuit of Missouri.  The remaining allegations in paragraph 17 constitute legal conclusions to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in the paragraph.

**PARTIES**

18.     Defendants admit the allegations in paragraph 18.

19.     Defendants admit only that Eric S.  Schmitt ("Schmitt") is the 43rd Attorney General of the State of Missouri.   Defendants otherwise deny the remaining allegations in paragraph 19.

20.     Defendants deny the allegations in paragraph 20.

21.     Defendants deny the allegations in paragraph 21.

22.     Defendants deny the allegations in paragraph 22.

23.     The allegations in paragraph 23 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

24.     Defendants deny the allegations in paragraph 24.

25.     Defendants admit the allegations in paragraph 25.

26.     The allegations in paragraph 26 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

27.     Defendants admit the allegations in paragraph 27.

28.     In response to paragraph 28, Defendants admit only that Darlene Green is the Comptroller of the City.  The remaining allegations in paragraph 28 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in the paragraph.

29.     Defendants admit the allegations in paragraph 29.

## ALLEGATIONS

30.     Defendants admit the allegations in paragraph 30.

31.     The allegations in paragraph 31 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

32.     The allegations in paragraph 32 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

33.     The allegations in paragraph 33 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

34.      The allegations in paragraph 34 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

35.     Defendants admit only that Schmitt issued the opinion letter set forth in Exhibit B to the Complaint.  The remaining allegations in paragraph 35 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

36.     The allegations in paragraph 36 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph.

37.     Defendants admit only that paragraph 37 accurately recites a portion of § 188.017, RSMo. The remaining allegations in paragraph 37 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in the paragraph.

38.     Defendants admit only that the City passed Resolution Number 141 on December 3, 2021.  Defendants otherwise deny the allegations in paragraph 38.

39.     Defendants admit the allegations in paragraph 39..

40.     Defendants admit the allegations in paragraph 40.

41.     The allegations in paragraph 41 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph. Answering further, Defendants state that the provisions of BB 61 speak for themselves.

42.     The allegations in paragraph 42 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph. Answering further, Defendants state that the provisions of BB 61 speak for themselves.

43.     The allegations in paragraph 43 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph. Answering further, Defendants state that the provisions of BB 61 speak for themselves.

44.     The allegations in paragraph 44 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph. Answering further, Defendants state that the provisions of BB 61 speak for themselves.

45.     The allegations in paragraph 45 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph. Answering further, Defendants state that the provisions of BB 61 speak for themselves.

46.     The allegations in paragraph 46 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph. Answering further, Defendants state that the provisions of BB 61 speak for themselves.

47.     The allegations in paragraph 47 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in the paragraph. Answering further, Defendants state that the provisions of BB 61 speak for themselves.

48.     Defendants admit the allegations in paragraph 48.

49.     Defendants deny the allegations in paragraph 49.

## COUNT I

*Defendants filed their motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted on August 5, 2022.  (Doc. No. 12.)  If the allegations of Count*

*I, including paragraphs 50-58, are ever construed to state a claim against Defendants, Defendants deny same.*

## COUNT II

*Defendants filed their motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted on August 5, 2022.  (Doc. No. 12.)  If the allegations of Count II, including paragraphs 59-67, are ever construed to state a claim against Defendants, Defendants deny same.*

## COUNT III

*Defendants filed their motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted on August 5, 2022.  (Doc. No. 12.)  If the allegations of Count III, including paragraphs 68-74, are ever construed to state a claim against Defendants, Defendants deny same.*

## COUNT IV

*Defendants filed their motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted on August 5, 2022.  (Doc. No. 12.)  If the allegations of Count IV, including paragraphs 75-79, are ever construed to state a claim against Defendants, Defendants deny same.*

## AFFIRMATIVE AND OTHER DEFENSES

1.     Plaintiff State fails to state a claim upon which relief may be granted because, to the extent that § 188.205 regulates the expenditure of federal funds, it is invalid, void and unenforceable under the Supremacy Clause.

2.     Plaintiff State fails to state a claim upon which relief may be granted because § 188.205, §§ 188.205-.215 are invalid, void and unenforceable under the First Amendment.

3.      Plaintiff State fails to state a claim upon which relief may be granted because the City is a constitutional charter home rule city pursuant to Missouri Constitution Art. VI, §§ 16 and 19(a) and possesses all powers which the general assembly of the state of Missouri has authority to confer upon any city.

**PRAYER FOR RELIEF**

WHEREFORE, having fully answered the allegations of the Complaint, Defendants request that this Court dismiss the claims asserted against them with prejudice – see Doc. No. 12, award Defendants their costs and attorney's fees, and order such other relief as this Court deems fair and appropriate.

## COUNTERCLAIM OF CITY OF ST. LOUIS AND DR. MATIFADZA HLATSHWAYO DAVIS FOR DECLARATORY AND INJUNCTIVE RELIEF AGAINST ERIC SCHMITT IN HIS OFFICIAL CAPACITY

COME NOW City of St. Louis and Dr. Matifadza Hlatshwayo Davis – Director of Health for the City of St. Louis (collectively, "Counterclaim Plaintiffs"), and for their cause of action against Eric Schmitt, in his official capacity, state as follows:

**PARTIES**

1.      Plaintiff City of St. Louis (hereinafter, "City") is a municipal corporation organized and existing under the laws of Missouri.

2.      The City is a constitutional charter city pursuant to Missouri Constitution Art. VI, § 19(a).

3.      Dr. Matifadza Hlatshwayo Davis (hereinafter, "Dr. Hlatshwayo Davis") is the Director of Health for the City.

4.      Defendant State of Missouri ("State") is a sovereign state.

5.      Attorney General Eric Schmitt ("Schmitt") is the Attorney General of Missouri and represents the State of Missouri in actions against it.

6.      This suit is brought against Schmitt in his official capacity as Attorney General.

7.      Section 188.075, RSMo. provides that the Missouri attorney general has "concurrent original jurisdiction throughout the state … to commence actions for a violation of any provision" of Chapter 188.  He also "may seek injunctive or other relief against any person who, or entity which, is in violation of any provisions of this chapter, misuses public funds for an abortion, or violates any state law which regulates an abortion facility or a person who performs or induces an abortion."  Id.

## JURISDICTION

8.      This counterclaim is permitted pursuant to Federal Rule of Civil Procedure 13(a) because this claim arises out of the transaction and occurrence that is the subject matter of the opposing party's claim and does not require adding another party over whom the court cannot acquire jurisdiction.

9.      Jurisdiction for this counterclaim is proper in this Court pursuant to 28 U.S.C. § 1331 because it involves a contested federal question concerning the appropriation and regulation of federal funds.

## FACTUAL ALLEGATIONS

10.      Coronavirus disease 2019 ("COVID–19") was discovered in the United States in January 2020 and resulted in severe public health and economic crises.

11.      The COVID-19 public health crisis exacerbated existing social and economic inequalities in St. Louis City.

12.     COVID-19 precautions have disrupted how individuals access reproductive healthcare including birth control, annual exams, and family planning services.

13.     In March 2021, Congress enacted the American Rescue Plan Act ("ARPA"), to establish a local fiscal recovery fund, providing that, through December 31, 2024, local governments may use the recovery funds "to cover costs incurred" to, among other things, "respond to the public health emergency with respect to the [COVID-19 pandemic] or its negative economic impacts . . ."  Pub. L. No. 117-2, 135 Stat. 4 (2021) (codified at 42 USC § 803).

14.     31 CFR § 35 implements section 9901 of ARPA, which amends Title VI of the Social Security Act (42 U.S.C. § 801, et seq.) by adding sections 602 and 603 to establish the Coronavirus State Fiscal Recovery Fund and the Coronavirus Local Fiscal Recovery Fund ("CLFRF"), establishing a fund for metropolitan cities, nonentitlement units of local government, and counties.

15.     The City is a recipient of federal funds from the CLFRF.

16.     The eligible uses for federal CLFRF funds are set forth in subpart A of 31 CFR § 35.

17.     Congress intended to afford recipients of federal CLFRF dollars maximum flexibility to spend the funds in a manner that suits the needs of that particular community.  See generally 31 CFR § 35.6.

18.     CLFRF funds are not subject to the Hyde Amendment, which restricts the use of federal funds for abortions except under certain specified circumstances.

19.     On January 27, 2022, the Department of Treasury promulgated final rules to guide in the implementation of, and identify categories of, eligible uses for federal ARPA funds.  87 Fed. Reg. 4338 (Jan.  27, 2022).

20.     The final rule acknowledges that the State Local Fiscal Recovery Funds provide "substantial flexibility to recipients to respond to pandemic impacts in their local community."  87 Fed. Reg. 4340 (Jan.  27, 2022).

21.      The final rule further provides, "[t]his flexibility is designed to help state, local, and Tribal governments adapt to the evolving public health emergency and tailor their response as needs evolve and to the particular local needs of their communities."  Id.

22.     Chapter 188 of the Missouri Revised Statutes sets forth provisions relating to the "Regulation of Abortions."

23.     Section 188.205 RSMo. provides that "[i]t shall be unlawful for any public funds to be expended for the purpose of performing or assisting an abortion, not necessary to save the life of the mother, or for the purpose of encouraging or counseling a woman to have an abortion not necessary to save her life."

24.     Section 188.200 defines "public funds" to include "any funds received or controlled by this state or any agency or political subdivision thereof, including, but not limited to, funds derived from federal, state or local taxes, gifts or grants from any source, public or private, federal grants or payments, or intergovernmental transfers."

25.     Section 188.210 states that

> it shall be unlawful for any public employee within the scope of his employment to perform or assist an abortion, not necessary to save the life of the mother.  It shall be unlawful for a doctor, nurse or other health care personnel, a social worker, a counselor or persons of similar occupation who is a public employee within the scope of his public employment to encourage or counsel a woman to have an abortion not necessary to save her life.

26.     Section 188.215 states "[i]t shall be unlawful for any public facility to be used for the purpose of performing or assisting an abortion not necessary to save the life of the mother or

11

for the purpose of encouraging or counseling a woman to have an abortion not necessary to save her life."

27.     On July 15, 2022, the City's Board of Aldermen ("BOA") enacted BB 61 to address economic and social inequalities resulting from, or exacerbated by, the COVID-19 public health crisis.   See Doc. No. 1-3, pp. 52-59.

28.     The bill was signed by the Honorable Tishaura O. Jones – Mayor for the City – on July 21, 2022.

29.     BB 61 expressly states that CLFRF funds "will not be used to fund or assist abortion procedures nor shall funds be used to encourage or counsel an individual to have an abortion."

30.     Pursuant to the requirements in 42 USC § 803(c)(1), BB 61 provides for the expenditure of $1.5 million in "State and Local Fiscal Recovery Funds" under ARPA, to establish a "Reproductive Equity Fund" dedicated "to logistical support" of reproductive healthcare access.

31.     BB 61 identifies beneficiaries and populations disproportionally affected by the COVID-19 public health crisis and its negative economic impacts, including people experiencing economic insecurity below the federal poverty line and uninsured individuals.

32.     BB 61 further notes the pregnancy-related mortality ratio for Missourians is one of the highest in the county and four times greater for Black women than white women at 87.6 per 100,000 live births.

33.     BB 61 appropriates $1,000,000 of CLFRF funds appropriated to the City to the Department of Health for establishing a process to allocate the funds to community partners through Reproductive Equity Fund grants.

34.     BB 61 further appropriates $500,000 of CLFRF Funds appropriated to the City to the Department of Health for the purpose of establishing a process to allocate the funds to

community partners through grants as part of a Reproductive Equity Fund "dedicated to community needs."

35.    BB 61 appropriates $250,000 of CLFRF Funds appropriated to the City to the Department of Health for "administrative oversight and evaluation for the Reproductive Equity Program and Fund."

36.    BB 61 states that allocations for "logistical support" will be used to provide access to abortion through logistical support including but not limited to the funding of childcare, transportation, and other logistical support needs."

37.    BB 61 states that allocations "for community needs" will support infrastructure and operations for organizations already providing direct services to support reproductive healthcare access in the region including access to doulas and lactation support.

**COUNT I – CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF BARRING SCHMITT FROM ENFORCING § 188.205 BECAUSE IT VIOLATES THE SUPREMACY CLAUSE**
***(ON BEHALF OF THE CITY)***

38.    Supremacy Clause Art. VI, Cl. 2 states that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

39.    If a state statute conflicts with federal law or stands as an obstacle to the accomplishment of the full purposes and objectives of Congress, it is invalid under the Supremacy Clause.

40.    Section 188.205 purports to regulate the expenditure of "funds derived from federal taxes" and funds derived from "federal grants or payments."

13

41.     Section 188.205 therefore purports to limit and regulate the expenditure of federal funds received by units of local government, including federal funds received under CLFRF.

42.     Section 188.205 frustrates Congress's intent that local governments be afforded the flexibility to spend CLFRF funds in a manner that best suits the needs of that particular community.

43.     Section 188.205 violates the Supremacy Clause to the extent it limits the City's expenditure of CLFRF and other federal funds.

44.     To the extent that § 188.205 conflicts or frustrates federal law by limiting and regulating the expenditure of federal funds, it is void and unenforceable under the Supremacy Clause.  Lawrence County v. Lead-Deadwood School Dist., 469 U.S. 256, 270 (1985).

45.     Accordingly, § 188.205 violates the Supremacy Clause.

46.     28 U.S.C. §§ 2201 permits Counterclaim Plaintiffs to seek a declaration from this Court concerning the Defendants' "rights and other legal relations" under § 188.205.

47.     The City is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that to the extent § 188.205 impermissibly regulates the expenditure of federal funds under CLFRF, or any other federal award or grant, it is invalid and unenforceable.

48.     Section 188.075 provides that Schmitt "shall have concurrent original jurisdiction . . . to commence actions for a violation" of any provision of Chapter 188.

49.     The City is also entitled to injunctive relief barring Schmitt from enforcing the provisions of § 188.205 with regard to the expenditure of federal dollars received under CLFRF or any other federal award or grant.

**COUNT II – CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF BARRING SCHMITT FROM ENFORCING §§ 188.205-215 BECAUSE THE STATUTES ARE UNCONSTITUTIONALLY OVERBROAD AND VAGUE UNDER THE FIRST AMENDMENT (*ON BEHALF OF THE CITY & DR. HLATSHWAYO DAVIS*)**

14

50.     The First Amendment of the United States Constitution provides that "Congress shall make no law . . .  abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

51.     Chapter 188 of the Missouri Code prohibits, as relevant, the performance or assistance of abortion procedures, as well as the use of public funds, employees, or facilities to, inter alia, encourage or assist the performance of abortion procedures.

52.     Chapter 188 does not define the terms "encourage" or "assist."

53.     On July 21, 2022, the State filed the instant action, alleging the City's enactment of BB 61, to create a Reproductive Equity Fund, using federal CLFRF funds under 42 U.S.C. § 803, was unlawful use of public funds, employees, and facilities, in violation of §§ 188.205-215, respectively.

54.     Specifically, the State has interpreted §§ 188.205-215's language barring the usage of public funds, employees, or facilities to "assist" or "encourage" a "woman to have an abortion not necessary to save her life," as prohibiting the Counterclaim Plaintiffs from directing or otherwise administering federal CLFRF funds to subsidize interstate travel costs related to accessing a legally available abortion in other jurisdictions.  Doc. No. 6, Compl., ¶¶ 51-58.

55.     In so doing, the State, has, by its own words, construed "assist," as that term is used in §§ 188.205-215, to be "a broad term," and one that means any conduct that "'give[s] support or aid' to abortion."  Id.  at 52; see also Doc. No. 7., State's Motion for Preliminary Injunction, p. 4.

56.     The State has further, by its own words interpreted "support" to mean activity that "'actively promote[s] the interest or cause of' and to 'argue in favor of.'"  See id. at p. 5.

57.     The State has, by its own words, further construed "encourage," as that term is used in §§ 188.205-215, to mean any conduct that "'spur[s] on [,] stimulate[s]' or 'give[s] help or patronage to[, or otherwise] foster[s]'" abortion.  Id. at 5.

58.     The text of BB 61 expressly forecloses any funds from being used to "encourage or counsel an individual to have an abortion."

59.     Instead, the text of BB 61, as relevant, directs funds to subsidize costs associated with interstate travel, by providing grants to vendors who provide "logistical support" services, such as childcare, transportation, and other similar services.

60.     Despite this, the State has concluded that the Reproductive Equity Fund's subsidization of activity wholly attenuated from the performance of an abortion procedure, is unlawful under §§ 188.205-215.

61.     The State has exclusively based this conclusion on its broad, arbitrary, and indiscernible understanding of the terms "encourage" and "assist."

62.     The City owns, operates, or otherwise funds, a number of facilities wherein expressive political and ideological speech and expressive activities related to pro-choice advocacy routinely take place.

63.     On information and belief, such public forums include, but are not limited to, City Hall, City commissions and boards, City parks, and City streets.

64.     On information and belief, the City utilizes its employees to, inter alia, process permits for events related to pro-choice advocacy, ensure the safety of the public at such events, and maintain spaces held open to the public to use for pro-choice rallies, protests, and community health events.

16

65.     On information and belief, such publicly funded efforts and activities may indirectly spur, stimulate, or otherwise favorably argue for, or give support or aid to the eventual procurement of abortion procedures.

66.     Accordingly, §§ 188.205-215's prohibition on public funds, employees, and facilities that "encourage" or "assist" an abortion threatens restriction of constitutionally protected speech and other expressive activity.

67.     §§ 188.205-215's prohibition on public funds, employees, and facilities that "encourage" or "assist" an abortion amounts to real and substantial overbreadth under the First Amendment, which exceeds the state's legitimate power to regulate abortion procedures within Missouri borders.

68.     §§ 188.205-215's prohibition on public funds, employees, and facilities that "encourage" or "assist" abortion procedures is also unconstitutionally vague under the First Amendment.

69.     §§ 188.205-215 do not define or otherwise indicate what conduct or speech amounts to impermissible encouragement or assistance of abortion procedures.

70.     §§ 188.205-215 provides no exceptions or guidance regarding protected speech, such as City approval of pro-choice events, providing information regarding interstate access to legal abortion procedures, providing medical advice regarding options for interstate legal abortion procedures, or expressing any other deeply held belief concerning a woman's right to bodily reproductive autonomy.

71.     Neither the language of §§ 188.205-215, nor the State's definition of "encourage" and "assist," provide any definite rule as to how the Counterclaim Plaintiffs may conduct themselves to comply with the requirements therein.

72.     Dr. Hlatshwayo Davis, in her role as Director of Health, is tasked with ensuring and safeguarding the public health of the City.

73.     In doing so, Dr. Hlatshwayo Davis regularly addresses the public regarding matters of public health, including on issues related to reproductive healthcare.

74.     Additionally, Dr. Hlatshwayo Davis is responsible for directing staff at the City's Department of Health, and for deliberating with various City Commissions, to provide medically and legally sound healthcare-related services, advice, and assistance to City residents.

75.     These residents include pregnant individuals seeking access to reproductive healthcare.

76.     Additionally, City officials approve event permits, close City streets, and ensure the safety of the public in connection with rallies or other assemblies of residents.

77.     The City, Dr. Hlatshwayo Davis, and other City officials are unable to discern, based on the language of Chapter 188, as well as the State's construction of §§ 188.205-215, how they may conduct themselves in performing their duties for the City, and in what manner they may or may not speak on abortion-related matters.

78.     Accordingly, §§ 188.205-215 are unconstitutionally vague.

79.     Counterclaim Plaintiffs are entitled to a declaratory judgment that §§ 188.205-215 are unconstitutionally overbroad and vague under the First Amendment.

80.     Section 188.075 provides that Schmitt "shall have concurrent original jurisdiction . . . to commence actions for a violation" of any provision of Chapter 188.

81.     Counterclaim Plaintiffs are also entitled to injunctive relief barring Schmitt from enforcing the provisions of §§ 188.205-215.

## COUNT III - CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF BARRING SCHMITT FROM ENFORCING §§ 188.205-215 IN THAT THE STATUTES ARE INVALID UNDER ART. VI §§ 16 AND 19(A) OF THE MISSOURI CONSTITUTION (*ON BEHALF OF THE CITY*)

82.     Missouri Constitution Art. VI, § 19(a) states that charter cities:

> shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute[; s]uch a city shall, in addition to its home rule powers, have all powers conferred by law

83.     By the State's own words, the City is a Charter City, which has all powers so conferred by law.

84.     Missouri Constitution Art. VI § 16 confers upon the City the power to "cooperate with . . . the United States, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service, in the manner provided by law."

85.     The City has cooperated with the United States, pursuant to the terms and requirements set forth under  42 U.S.C. § 803, to accept, direct, and expend CLFRF funds towards rectifying the adverse effects of COVID-19.

86.     Sections 188.205-215 cannot limit the City's constitutionally conferred power to cooperate with the United States in the distribution and expenditure of CLFRF funds, for the purpose of developing a public service, i.e., administration of the Reproductive Equity Fund.

87.     Accordingly, §§ 188.205-215 amount to an unconstitutional limitation on the City's constitutionally conferred power to cooperate with other government entities to provide otherwise permissible public services, under Art. VI §§ 16 & 19(a).

88.     The City is entitled to a declaratory judgment that §§ 188.205-215 are void and unenforceable to the extent that they conflict with Art. VI §§ 16 & 19(a).

89.     Section 188.075 provides that Schmitt "shall have concurrent original jurisdiction . . . to commence actions for a violation" of any provision of Chapter 188.

90.     The City is further entitled to injunctive relief barring Schmitt from enforcing the provisions of §§ 188.205-215.

WHEREFORE Counterclaim Plaintiffs pray this Court enter judgment in their favor and:

1.     Declare § 188.205 invalid, void and unenforceable under the Supremacy Clause to the extent the statute conflicts or frustrates federal law by limiting and regulating the expenditure of federal funds;

2.     Declare §§ 188.205-.215 invalid, void and unenforceable under the First Amendment;

3.     Declare §§ 188.205-.215 invalid, void and unenforceable to the extent that they conflict with Art. VI §§ 16 & 19(a); and

4.     Enjoin Attorney General Eric Schmitt from enforcing the provisions of §§ 188.205-.215.

Dated:  August 17, 2022                   Respectfully submitted,

**SHEENA HAMILTON**
**CITY COUNSELOR**

By: */s/* Erin K.  McGowan

| | |
|---|---|
| Erin McGowan | #64020MO |

*Associate City Counselor, Affirmative Litigation Unit*

| | |
|---|---|
| Ankoor Shah | #65606MO |
| Rebecca S.  Sandberg-Vossmeyer | #70342MO |
| Adam Sheble | #74230MO |

*Assistant City Counselors, Affirmative Litigation Unit*

314 City Hall
1200 Market St.
St. Louis, Missouri 63103
(314) 622-3361 (telephone)
(314) 622-4956 (facsimile)
mcgowane@stlouis-mo.gov
shaha@stlouis-mo.gov
vossmeyerr@stlouis-mo.gov
sheblea@stlouis-mo.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2022 **Defendants' Answer and Counterclaim of Counterclaim Plaintiffs – the City of St. Louis and Dr. Matifadza Hlatshwayo Davis**, were electronically filed with the Clerk of Court using the Court's electronic filing system, to be served on all counsel of record.

*/s/* Erin K.  McGowan