# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| THE STATE OF MISSOURI ex rel. ERIC S. SCHMITT, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 4:22-cv-00789-AGF |
| v. | ) ) | |
| THE CITY OF ST. LOUIS, et al. | ) ) | |
| *Defendants*. | ) | |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

On July 21, 2022, Plaintiff State of Missouri ex. rel Eric Schmitt ("State") filed this case in Missouri State Court against Defendants the City of St. Louis, et al. ("City"). The State challenged the City's recently enacted Board Bill 61 ("BB61"), which violates Missouri law, §§ 188.205-.215, RSMo, by using public funds to assist and encourage out-of-state abortions. After the City removed the case to federal court, it filed a motion to dismiss and memorandum in support thereof under Fed. R. Civ. P. 12(b)(6) (Dkt. Nos. 12, 13). In its memorandum in support, the City alleged that the State failed to state a claim on which relief can be granted because §§ 188.205-.215 violate the Supremacy Clause, the First Amendment, and article VI, sections 16 and 19(a) of the Missouri Constitution. Because these arguments fail, this Court should deny the City's motion to dismiss.

## LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Rock Dental Arkansas PLLC v. Cincinnati Ins. Co.*, 40 F.4th 868, 870 (8th Cir. 2022) (cleaned up). "When determining whether a claim is facially plausible, [courts] accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Cole v. Homier Distribut. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010).

"When interpreting a [federal] statute, [courts] begin by analyzing the statutory language, assuming that the ordinary meaning of that language accurately expresses the legislative purpose." *Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 394 (8th Cir. 2022) (cleaned up). In determining statutory meaning, courts consider the whole statute. *Id*.

When interpreting a Missouri statute or the Missouri constitution, this court applies Missouri's rules of statutory construction. *See Wireco WorldGroup, Inc. v. Liberty Mut. Fire Ins.*

1

*Co.*, 897 F.3d 987, 991 (8th Cir. 2018). In Missouri, "[t]he primary goal of statutory interpretation is to give effect to legislative intent, which is most clearly evinced by the text of the statute." *Cooperative Home Care, Inc. v. City of St. Louis*, 514 S.W.3d 571, 583 (Mo. 2017). "[A] word not defined in a statute is given its ordinary meaning pursuant to the dictionary." *Gross v Parson*, 624 S.W.3d 877, 884 (Mo. 2021). If one interpretation of a statute is constitutional and another interpretation is not, courts presume the General Assembly intended the constitutional one. *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 838-39 (Mo. 1991). Missouri statutes are interpreted "as a whole." *See Roland v. St. Louis City Bd. of Elec. Comm'rs*, 590 S.W.3d 315, 323 (Mo. 2019).

## ARGUMENT

### I. Section 188.205 does not violate the Supremacy Clause.

The City claims that § 188.205 violates the Supremacy Clause. It does not. "Federal preemption of state law can occur" in three ways: express preemption, field preemption, or conflict preemption. *Soo Line R.R. Co. v. Werner Enter.*, 825 F.3d 413, 420 (8th Cir. 2016). By arguing that § 188.205 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in passing ARPA, MTD Memo. p.5 (Dkt. No. 13), the City invokes conflict preemption. *Soo Line*, 825 F.3d at 420. "Whether a particular state law constitutes a sufficient obstacle and, therefore, is preempted "is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Soo Line*, 825 F.3d at 420. But courts "start with the assumption that the historic police powers of the States were not to be superseded by" federal law "unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *see also Soo Line*, 825 F.3d at 420. The States' police powers are those that "state[s] did not surrender when becoming a member of the Union under the Constitution," including "such reasonable regulations…as will protect the public

2

health and the public safety." *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905).

Here, the City claims that the State may not use § 188.205, RSMo, to enjoin the City from expending ARPA funds pursuant to BB61 because this use of § 188.205 is conflict preempted by ARPA, 42 U.S.C. § 803(c)(1). *See* MTD Memo. p.5. Under BB61 § 1, the City appropriated $1 million in ARPA funds to establish a "Reproductive Equity Fund" that "will be used to provide access to abortion through logistical support including but not limited to the funding of childcare, transportation, and other logistical support needs." Petition Ex. p.40 (Dkt. No. 6-1). Under BB61 § 2, the City appropriated $500,000 in ARPA funds to establish a "Reproductive Equity Fund" that "will support infrastructure and operations for organizations already providing direct services to reproductive healthcare access in the region including access to doulas and lactation support," but does not state that it will not support abortions or abortion logistical support. *Id*. p.41.

Section 188.205, RSMo, states:

> [i]t shall be unlawful for any public funds to be expended for the purpose of performing or assisting an abortion, not necessary to save the life of the mother, or for the purpose of encouraging or counseling a woman to have an abortion not necessary to save her life.

This statute prevents governments from expending public funds for the purpose of performing or assisting an abortion or for the purpose of encouraging or counseling a woman to have an abortion.

ARPA § 803(c)(1) places limitations on the use of ARPA funds, stating that: "a metropolitan city…***shall only use the funds*** provided under a payment made under this section to cover costs incurred by the metropolitan city…by December 31, 2024" and only insofar as those costs fit within four limited provisions in § 803(c)(1)(A)-(D). 42 U.S.C. § 803(c)(1)(A)-(D). One of these limitations permits ARPA funds to cover costs "to respond to the public health emergency with respect to [COVID] or its negative economic impacts, including assistance to households, small businesses, and nonprofits, or aid to impacted industries such as tourism, travel, and

3

hospitality[.]" 42 U.S.C. § 803(c)(1)(A).  In response to this statute, the U.S. Department of the Treasury ("Treasury") issued regulations governing ARPA implementation.  *Coronavirus State and Local Fiscal Recovery Funds*, 87 Fed. Reg. 4338, 4338 (2022).  In 31 CFR § 35.6(b), the regulations clarify 42 U.S.C. § 803(c)(1)(A) by defining what constitutes "[r]esponding to the public health emergency or its negative economic impacts."

There is a presumption that 42 U.S.C. § 803(c)(1) does not preempt § 188.205, RSMo, because § 188.205 concerns abortion—a part of Missouri's police powers that were "not surrender[ed] when becoming a member of the Union under the Constitution" *See  Jacobson*, 197 U.S. at 25; *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2284 (2022) ("The Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion."); MTD Memo. p.10 (admitting States have power to regulate abortion).  Section 188.205, RSMo, is also part of Missouri's police powers because it relates to "public health and safety" for pregnant women and unborn children.  *See Jacobson*, 197 U.S. at 25; *see also* § 188.010.

Further, there is no basis for finding that § 188.205 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in 42 U.S.C. § 803(c)(1).  *See Soo Line*, 825 F.3d at 420.  Nothing in § 803(c)(1) indicates that municipalities need not abide by State (or local) law when spending ARPA funds.  Contrary to the City's arguments, § 803(c)(1) and (c)(1)(A) do not demonstrate any "purpose…to permit local governments maximum flexibility in responding to particular local public health needs," *see* MTD Memo. p.6, because they are structured as limitations within a limitation.  First, § 803(c)(1) *limits* cities' use of ARPA funds to "cover[ing] costs incurred by the…city…by December 31, 2024." Nothing in this section suggests that a City may violate State law in incurring these costs.  Then, § 803(c)(1)(A)-(D) *further limits* what "costs incurred" may be reimbursed with ARPA funds to,

4

among other enumerated things, costs incurred to respond to the COVID-19 public health emergency or its negative economic impacts. Again, nothing in the statute suggests that the City need not comply with State law or, for that matter, its own ordinances, in using ARPA funds.

The City argues the contrary, pointing to regulations in 31 CFR 35.6(b), 31 CFR 35.12(d), and 87 Fed. Reg. 4340, to no avail. *See* MTD Memo. p.2. First, Treasury's regulations do not inform this Court about Congress's purposes because Treasury, not Congress, wrote them. *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496 (2022) ("Congress expresses its intentions through statutory text passed by both Houses and signed by the President (or passed over a Presidential veto)."). Second, neither regulation shows that even Treasury intended to permit municipalities to use ARPA funds in a way that violates State or local law. For instance, in 31 CFR 35.6(b), the Department of the Treasury only further defines the phrase "[r]esponding to the public health emergency or its negative economic impacts" in 42 U.S.C. § 803(c)(1)(A). The City also incorrectly argues that 31 CFR 35.12(d) prohibits the State from regulating the use of ARPA funds because it states that: "[a] State…may not place additional conditions or requirements on distributions to…units of general local government beyond those required by section 603 of the Social Security Act or this subpart." But 31 CFR 35.12(a)-(d) govern welfare payments from States to local governments under 42 U.S.C. § 603(b)—not ARPA payments. Finally, 87 Fed. Reg. 4340 does not permit cities to violate their State's laws in spending ARPA funds. Rather, it clarifies that the rule "provide[s] substantial flexibility…to help state, local, and Tribal governments adapt…and tailor their response…to the particular local needs of their communities." Not only are the particular local needs of Missourians informed by the General Assembly's statutes—but they expressly exclude abortions. *See* Mo. Const. art. VI, § 19(a) (Charter cities cannot violate Missouri statutes); § 188.010(2) ("[T]he state and all of its political subdivisions

5

are a 'sanctuary of life' that protects pregnant women and their unborn children"); §§ 188.205-.215. Additionally, the City's interpretation would violate the regulation's purpose—to help local *and state* governments adapt and tailor their response to the particular local needs of their communities—by *prioritizing* local governments over States.

> II.  **Sections 188.205-.215 are not unconstitutionally overbroad or vague.**

The City claims that the State fails to state a claim for relief because §§ 188.205-.215 violate the First Amendment in that they are unconstitutionally vague and overbroad. MTD Memo. p.9. These claims fail.

> A.  **Overbreadth.** With respect to overbreadth, the City claims that §§ 188.205-.215 are so unclear, and the State's understanding of their application is so sweeping, that they prohibit protected First Amendment activity, and so they must be ruled unconstitutional in their entirety. MTD p.9. The City makes several overbreadth arguments: the State's construction of "assist" or "encourage" (1) prohibits the City from allowing protests, speeches, and demonstrations advocating abortions in its parks and similar spaces open to the public; (2) prohibits the City from processing permits for demonstrations, protests, or speeches about abortion in spaces open to the public; (3) prohibits health advocates and officials from using online forums for hearings, debate, and community outreach"; and (4) implicates the constitutional right to associate in the context of interstate travel. MTD Memo. pp.11-12.

The City does not contend that the State's construction §§ 188.205-.215 violates the First Amendment as applied to BB61. Rather, it argues that the Court cannot apply §§ 188.205-.215 *here* because those statutes may violate the First Amendment in *other situations*. MTD Memo. pp.11-12 ("[T]he State's construction of 'assist' or 'encourage' here may permit it to bring civil actions prohibiting [protected 1st Amendment activities]"). The City cannot bootstrap an

6

overbreadth challenge to §§ 188.205-.215 into its motion to dismiss, as this would allow the City to circumvent its requirement to plead standing.  *See, e.g.*, *Republican Party of Minnesota, Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 791-92 (8th Cir. 2004) (determining whether a party had standing to bring an overbreadth challenge to a statute).  If the City wishes to facially challenge §§ 188.205-.215, it must do so via its counterclaims—not through a motion to dismiss.

     Even if the City could bring an overbreadth challenge to §§ 188.205-.215 in a motion to dismiss, that claim would fail.  "In the First Amendment context, [courts] recognize a unique species of facial challenge, under which a law may be overturned as impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Sisney v. Kaemingk*, 886 F.3d 692, 698-99 (8th Cir. 2018).  "The aim of facial overbreadth analysis is to eliminate the deterrent or chilling effect an overbroad law may have on those contemplating conduct protected by the First Amendment."  *Klobuchar*, 381 F.3d at 791.  "Thus, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep."  *Id*.  Nonetheless, the Supreme Court has noted that facial challenges to criminal statutes on First Amendment overbreadth grounds are "especially to be discouraged" because "they entail a further departure from the norms of adjudication in federal courts" including "relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances than those at hand."  *Id*.  "Standing is the threshold question in determining whether a federal court may hear a case."  *Id*.  "Thus, a party invoking federal jurisdiction" for a First Amendment facial overbreadth claim "has the burden of establishing standing," including "actual injury."  *Id*.  "With regard to a First Amendment facial-overbreadth claim, actual injury can exist

7

for standing purposes…as long as the plaintiff is objectively reasonably chilled from exercising his First Amendment right to free expression in order to avoid enforcement consequences." *Id*.

Here, the City's and City Officials' overbreadth claim fails because they lack standing to bring it.  The City and its officials are not injured for standing purposes because they are not "objectively reasonably chilled from exercising [their] First Amendment rights to free expression in order to avoid enforcement consequences," as §§ 188.205-.215 prohibit unprotected government actions and speech, not protected private speech.  *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 468 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech.").  Section 188.205 clearly prohibits government actions and speech by prohibiting public funds from being "expended for the *purpose* of performing or assisting an abortion" or "for the *purpose* of encouraging or counseling a woman to have an abortion not necessary to save her life."  This does not restrict protected private speech because the statute addresses only the government's purpose in expending funds.  Section 188.210 also only limits government conduct and speech because it prohibits public employees acting as such (not private citizens) from performing or assisting abortions and encouraging or counseling a woman to have an abortion.  Section 188.215 only limits government conduct and speech because it prohibits the government from using public facilities to perform or assist abortions or using public facilities for the purpose of encouraging or counseling a woman to have an abortion.  If there are two fair ways to read one of these statutes—one that unlawfully prohibits protected private speech and another that implicates only unprotected speech, this Court should read the statute in the way that makes it constitutional.  *See Blaske*, 821 S.W.2d at 838-39.  Further, with respect to § 188.205, governments may restrict even private individuals' use of public funds without violating even private free-speech rights.  *See, e.g.*, *Rust v. Sullivan*, 500 U.S. 173, 181,

8

198-99 (1991) (prohibiting individuals voluntarily employed for a Title X project from counseling and referring women to have abortions without violating the First Amendment).  So too here.  Thus, the City has no standing to bring a facial overbreadth challenge.

Assuming the City brought an as-applied challenge (it did not, so this Court should not consider such an argument), the as-applied challenge would fail.  As applied here, using §§ 188.205-.215 to invalidate BB61 does not violate the First Amendment.  BB61 § 1 requires the City to establish a Reproductive Equity Fund to pay for logistical support for abortions.  Petition Ex. p.40.  BB61 § 2 requires the City to establish a Reproductive Equity Fund for "infrastructure and operations for organizations already providing direct services to support reproductive healthcare access in the region." Pet. Ex. p.41.  The fact that §§ 188.205-.215 prohibit the City from using BB61 §§ 1 and 2 to fund abortion assistance, encouragement, or counseling with ARPA funds does not violate the First Amendment.  *See Rust*, 500 U.S. at 198-99.

Finally, even assuming the City can bring a facial challenge to §§ 188.205-.215 (they cannot, *see supra*), it would fail because the City has not shown that a "substantial number of [§§ 188.205-.215's] applications are unconstitutional, judged in relation to [their] plainly legitimate sweep."  *Sisney*, 886 F.3d at 698-99.  Each statute—§ 188.205, § 188.210, and § 188.215—must be analyzed separately because they are expressly severable from each other. *See* § 188.018.  The only applications the City suggests are unconstitutional are that the State could use the terms "assist" and "encourage" in §§ 188.205-.215 to prohibit (1) private persons from using public fora, such as City parks, for protests, speeches, and gatherings that support abortion; (2) the City from processing permits for demonstrations, (3) "advocacy by health advocates and officials" in their private capacity in "online forums used for hearings, debate, and community outreach efforts," or (4) interstate travel.  MTD Memo. pp.11-12.

9

The City's first, second, and third concerns do not implicate § 188.205 because that statute's text does not prohibit private persons from using public fora, including online fora, for speeches and demonstrations or prohibit the City from permitting citizens to demonstrate in public parks, as simply issuing a permit does not constitute government speech or government endorsement.  *Shurtleff v. Boston*, 142 S. Ct. 1583, 1592 (2022).  Neither do those concerns implicate § 188.210 because that statute's text only prohibits speech by public employees "within the scope of [their] employment."  Finally, these concerns do not implicate § 188.215.  Section 188.215 prohibits public facilities from being used for performing abortions or assisting abortions (which does not implicate speech, but rather action).  Further, § 188.215 prohibits government from using a public facility for the purpose of encouraging or counseling a woman to have an abortion not necessary to save her life, which is not protected speech under the First Amendment.  *Pleasant Grove*, 555 U.S. at 468.

The City's fourth concern does not implicate § 188.205 because it only limits government's ability to *fund* interstate travel for certain purposes, not interstate travel itself.  And it does not implicate §§ 188.210 or .215 because those statutes do not prohibit interstate travel.  For all the reasons discussed *supra*, this Court should deny the City's motion to dismiss on the basis of overbreadth.

      **B.**    **Vagueness.**  The City claims that §§ 188.205-.215 are unconstitutionally vague under the First Amendment because "they provide no rule or standard as to their enforcement." MTD p.13.  The City claims that the Eighth Circuit already has determined the words "encouraging" and "counseling" in Chapter 188, RSMo, are void for vagueness and that, here, "the prohibition of public funds, employees, [and] facilities from 'encouraging' or 'assisting'" abortions…completely lacks any objective standard" that City officials "may follow in

10

administering the Reproductive Equity Fund." *Id*.

"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304 (2008). The City cannot bring this challenge because cities do not have due-process rights. *Committee of Educ. Equality v. State*, 878 S.W.2d 446, 450 n.3 (Mo. 1994) (political subdivisions are not considered "persons" having due-process rights); *see also Bd. of Educ. of City of St. Louis v. Mo. State Bd. of Educ.*, 271 S.W.3d 1, 14 (Mo. banc 2008) (same, and noting that "[v]oid for vagueness constitutional claims are grounded in due process rights, which the city board does not possess").

Courts "consider whether a statute is vague as applied to the particular facts at issue, for a plaintiff who engages in some conduct that is clearly proscribed cannot complain of vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (cleaned up). And a plaintiff "certainly cannot [complain of vagueness] based on the speech of others." *Id*. at 20. "[W]hen a statute interferes with the right of free speech or association, a more stringent vagueness test should apply," but "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id*. at 19.

An as-applied vagueness challenge on the basis of BB61 § 1—which instructs the City "to provide access to abortion through logistical support"—fails because it clearly fits inside the dictionary definition of "assisting" an abortion under § 188.205. *See Holder*, 561 U.S. at 18-19 (vagueness as-applied standard); *Assist*, Webster's Third New International Dictionary 132 (2002) (noting that "assist" means "to give support or aid"); *Gross v Parson*, 624 S.W.3d 877, 884 (Mo. 2021) (undefined statutory terms given dictionary definition). A vagueness challenge on the basis of BB61 § 2—which instructs the City to "support infrastructure and operations for organizations already providing direct services to support reproductive healthcare access in the region" but fails

11

to exclude funds for performing, assisting, encouraging, or counseling abortions—also fails. The State has sued to prevent the City from implementing BB61 § 2 in a way that violates §§ 188.205-.215. To the extent the City wishes to use BB61 § 2 to issue ARPA funds for the purpose of performing, assisting, encouraging, or counseling abortions, this "conduct [] is clearly proscribed" by §§ 188.205-.215. Thus, the City's void-for-vagueness challenge fails.

Even if the City could raise a facial challenge through a motion to dismiss (it cannot), it would fail because the terms the City alleges are vague—"encourage," "assist"—do not "require [] untethered, subjective judgments." *See Holder*, 561 U.S. at 21; *see also Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 958 (8th Cir. 2019) (applying rule to undefined statutory terms). "[T]he mere fact that close cases can be envisioned" does not "render[] a statute vague." *Williams*, 553 U.S. at 305. For instance, in *Holder*, Court held the terms "training" and "expert advice or assistance" did not require "untethered, subjective judgments." 561 U.S. at 21. So too here. "Encourage" and "assist" have dictionary definitions that factfinders can readily apply. Webster's Third New International Dictionary 747 (2002) (defining "encourage" as "to spur on: stimulate" or "to give help or patronage to: foster"); *id*. at 132 (2002) (defining "assist" as "to give support or aid"); *see also Adam & Eve*, 933 F.3d at 958 (applying rule to undefined statutory terms).

Contrary to the City's arguments, the Eighth Circuit's prior case, *Reproductive Health Services v. Webster* (*Webster I*), does not control. 851 F.2d 1071 (8th Cir. 1988); MTD Memo. pp. 11-12. In *Webster I*, the Eighth Circuit held that §§ 188.205-.215's restrictions on using public funds, public facilities, and public employees to "encourage or counsel" a woman to have an abortion was void for vagueness. 851 F.2d at 1077. The Supreme Court vacated this holding with respect to § 188.205 in *Webster v. Reproductive Health Services* (*Webster II*). 492 U.S. 490, 512-13 (1989). Thus, *Webster I* does not control this Court's holding with respect to § 188.205, or

12

with respect to § 188.205's prohibition on *assisting* abortions, which *Webster I* did not address.

Next, the State will address *Webster I*'s holding with respect to §§ 188.210 and .215.  In *Webster I*, the Eighth Circuit held that the prohibition on "encouraging or counseling" implicated "both first and fourteenth amendment rights of both physicians and their patients:  the right to disseminate and receive information about abortion, and the right to knowingly and intelligently choose an abortion after consulting a physician."  851 F.2d at 1078.  It therefore applied the following vagueness test to "encouraging"[1]:  "whether the statute is sufficiently precise to serve the goals of fair notice and fair enforcement." *Id*. at 1077-78.  But the law has changed in multiple ways since *Webster I*.  First, the Supreme Court has since clarified that vagueness is properly determined as-applied first, and a plaintiff whose conduct is not clearly proscribed cannot complain the law is vague as applied to the conduct of others. *Holder*, 561 U.S. at 18-19.  Because *Webster I* did not address whether the plaintiffs' conduct was clearly proscribed, it reached the question whether the law was facially vague. *See id*.  It had no basis on which to do so.

Second, *Webster I* was decided before *Holder*'s determination that the terms "training" and "expert advice or assistance" did not require "untethered, subjective judgments" in the First Amendment context and therefore were not unconstitutionally vague. *Id*.  Because *Holder*'s guidance on what constituted "untethered, subjective judgments" would have changed the outcome in *Webster I*, *Webster I*'s holding that "encourage" is unconstitutionally vague in §§ 188.210 and .215 do not control the outcome of this case.  This Court's actions are controlled, first and foremost, by the Supreme Court, not by the Eighth Circuit. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 942 (2015) (federal courts are bound by the Supreme Court's holdings); *see also United States v.*

---

[1]The State's claims do not address "counseling," so it focuses on "encouraging" in §§ 188.210-.215.

13

*Taylor*, 803 F.3d 931, 933 (8th Cir. 2015) (per curiam) (holding that Eighth Circuit panels are not bound by prior Eighth Circuit precedent "when the earlier panel decision is cast into doubt by an intervening Supreme Court decision").

**III.     Sections 188.205-.215 do not violate article VI, sections 16 or 19 of the Missouri Constitution.**

  **A.     Article VI, section 16.**  The City claims the complaint must be dismissed because §§ 188.205-.215 are unconstitutional under art. VI, § 16 of Missouri's Constitution, which states:

> Any municipality…of this state may contract and cooperate…with the United States, for the planning, development, construction, acquisition, or operation of any public improvement or facility, or for a common service, in the manner provided by law.

Contrary to the City's arguments, MTD Memo. p. 15., article VI, section 16 is not a basis to dismiss this suit because (1) it does not permit the City to violate State law and (2) there is no "contract."

  Article VI, section 16 does not permit the City to violate Missouri law.  It permits municipalities to contract and cooperate with the United States for planning, developing, constructing, acquiring, or operating a common service *in the manner provided by law*.  Art. VI, § 16.  The "manner provided by law" is set forth in § 70.220, RSMo, *Sch. Dist. of Kansas City v. Kansas City*, 382 S.W.2d 688, 692 (1964), which states that the "contract or cooperative action made and entered into by such municipality…shall be within the scope of the powers of such municipality."  Thus, a municipality must follow laws passed by the General Assembly.  *Id*. at 692-93 ("[City] Charter must give way to…state laws in regard to governmental functions or general policies of statewide concern"); *City of St. Louis v. Grimes*, 630 S.W.2d 82, 83 (Mo. 1982) ("[T]he state has the right in the exercise of the police power to prescribe a policy of general state-wide application which applies to special charter cities.").  Article VI, section 19(a) also provides that a Charter City's powers cannot conflict with Missouri statutes.

  Article VI, section 16 also does not apply here because the City has not made a "contract"

14

with the United States, as required by both article VI, section 16 and § 70.220, RSMo.  Even if there was a contract, the City would need to show this through evidence, which it has not.

      **B.**      **Article VI, section 19(a).**  The City claims that the State's complaint must be dismissed because §§ 188.205-.215 violate article VI, section 19(a) of the Missouri Constitution, which states:

> Any city which…has adopted a charter for its own government[] shall have all powers which the general assembly…has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied…by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

On the basis of this constitutional provision, the City claims that it may cooperate with the United States to provide public services such as those contemplated by BB61.  MTD Memo. p.15.  But article VI, section 19(a) does not permit a Charter city to violate laws passed by the General Assembly.  It states that the City shall have broad powers so long as those powers are not "limited or denied…by statute."  *See also Kansas City*, 382 S.W.2d at 692-93 (holding that a city "Charter must give way to…state laws"); *Grimes*, 630 S.W.2d at 83 (holding Missouri may regulate special charter cities by prescribing policies of general state-wide application).  Because §§ 188.205-.215 apply to the City, the City's motion to dismiss on the basis of article VI, section 19(a) should fail.

      Finally, the City's argument that BB61 does not constitute encouragement and assistance fails.  MTD Memo. p.15.  Grant funds used to provide access to abortion through logistical support clearly are "expended for the purpose of…assisting an abortion" and for "encouraging" abortion because they "support or aid" or "help" women to procure abortions. § 188.205. Public employees who issue these funds for these purposes "encourage" abortions through monetary support. § 188.210.  And when the City uses its equipment and buildings to implement BB61, it uses that equipment and those buildings for the purpose of encouraging and assisting abortion.   For the reasons stated *supra*, this Court should deny the City's motion to dismiss in its entirety.

15

Respectfully submitted,

**ERIC S. SCHMITT**
Missouri Attorney General

<u>/s/ *Maria A. Lanahan*</u>
D. John Sauer, #58721
   *Solicitor General*
Maria A. Lanahan, #65956
   *Deputy Solicitor General*
Office of the Attorney General
Supreme Court Building
207 W. High Street
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8870
(573) 751-0774 (fax)
John.Sauer@ago.mo.gov
Maria.Lanahan@ago.mo.gov

*Counsel for Petitioner/Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 19, 2022, a true and correct copy of the foregoing was filed with the Court's electronic filing system to be served by electronic methods on counsel for all parties entered in the case.

<u>/s/ *Maria A. Lanahan*</u>