UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE STATE OF MISSOURI ex rel. ERIC S. SCHMITT, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No.   4:22-cv-00789-AGF |
| v. | ) ) | |
| THE CITY OF ST. LOUIS, et al. | ) ) ) | |
| *Defendants*. | ) | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

COME NOW the City of Saint Louis, the Honorable Darlene Green – Comptroller for the City of St. Louis, the Honorable Adam Layne – Treasurer for the City of St. Louis, and Dr. Matifadza Hlatshwayo Davis – Director of Health for the City of St. Louis (collectively, "Defendants"), and in reply to Plaintiff State of Missouri's Opposition to Defendants' Motion to Dismiss, state as follows:

**DISCUSSION**

**I.  The State fails to state a claim because § 188.205 violates the Supremacy Clause by purporting to dictate how City may spend federal funds pursuant to federal law.**

Invoking amorphous "police powers," the State argues that § 188.205 supersedes federal law to regulate the City's expenditure of federal American Rescue Plan Act ("ARPA") funds. Doc. 20 at 2-6. The State's argument fails for at least two reasons.  First, the State cites to no legal authority for its proclamation that § 188.205's prohibition on the use of federal funds for logistical support for interstate travel implicates "historic police powers."  Second, the State fails to cite any legal authority for its assertion that it may restrict the expenditure of federal ARPA funds where

1

Congress evinced an unmistakable intent to permit cities wide discretion to spend federal money to suit the particular needs of their communities.

The State relies upon Wyeth v. Levine, 555 U.S. 555 (2009) for its assertion that its "historic police powers" empower it to regulate the expenditure of federal funds. In Wyeth, the Supreme Court stated that "[i]n all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,'. . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" Id. at 565 citing Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (quotation omitted). Specifically, the State argues that because BB 61 "concerns abortion," a presumption exists that 42 U.S.C 803(c)(1) does not preempt § 188.205's regulation of ARPA funds. Doc. 20 at 4.

To reiterate, the State's authority to lawfully regulate abortion procedures in the State of Missouri is not at issue in this lawsuit. As Plaintiff notes and Defendants concede, the State has that authority, and accordingly, BB 61 expressly prohibits the use of ARPA funds "to fund or assist abortion procedures" or "to encourage or counsel an individual to have an abortion." Doc. 1-3 at 55. BB 61 merely provides that ARPA funds shall be used to provide "access to" legal reproductive healthcare "through logistical support including but not limited to the funding of childcare, transportation, and other logistical support needs." Id.

From there, the State fails to show that the expenditure of federal funds to enable interstate travel implicates its "historic police powers." To the contrary, it is well established the State has no power whatsoever to regulate interstate travel, Saenz v. Roe, 526 U.S. 489, 498–500 (1999), and the Supreme Court has specifically upheld the right for "persons who enter [a State] seeking the medical services that are available there." Doe v. Bolton, 410 U.S. 179, 200 (1973) (holding

2

residency requirement in a state statute regulating abortion violated Privileges and Immunities Clause); see also Griffin v. Breckenridge, 403 U.S. 88, 105–06 (1971) (stating cases "firmly" establish "right of interstate travel is constitutionally protected") (citations omitted).

Failing to acknowledge this constitutional limitation, the State invokes its power to enact "reasonable regulations… as will protect the public health and the public safety." Doc. 20 at 2-3 citing Jacobson v. Massachusetts, 197 U.S. 11 (1905). But, the State's power to regulate public health and safety do not extend beyond Missouri's borders. Though the Missouri legislature may regulate abortion procedures in Missouri, it does not follow that the State, by virtue of its police powers, may regulate the expenditure of *federal* funds for logistical support for travel to another state "[to seek] medical services that are available there." Doe, 410 U.S. at 200. Moreover, it cannot be said that a state statute regulating the expenditure of federal funds is legislation in "a field which the States have traditionally occupied." Wyeth, 555 U.S. at 565.

A federal district court recently rejected a similar argument that a state's power to regulate public health permitted it to flout Treasury's guidance on the use of federal ARPA funds. Ducey v. Yellen, 2022 U.S. Dist. LEXIS 127960 at *20–21 (D. Ariz. Jul. 19, 2022). There, the State of Arizona sought declaratory and injunctive relief to prevent the Department of Treasury from seeking recoupment of its State Local Fiscal Recovery Funds ("SLFRF") following a determination by the Department that the State was using SLFRF funds for ineligible purposes. Id. at *1–7.  The court denied Arizona's request for relief, finding that Treasury did not exceed its authority under ARPA. Id. at 21. The court rejected Arizona's "contention that public health matters are traditionally regulated at the state level" as a justification for the use of ARPA money for programs requiring noncompliance with COVID-19 public health guidelines.  Id. "The issue here," said the court "is not regulation of public health matters, but rather, regulation of the use of

3

federal funding, which falls squarely within the federal purview. Id. at *21 (citing Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 580 (2012).

As in Ducey, here, the issue is the City's expenditure of federal ARPA funds. This Court should likewise reject the State's "contention that public health matters are traditionally regulated at the state level" as justification for its attempt to invade the federal purview. The State may not regulate interstate travel, much less the City's use of federal funds for aiding interstate travel.

Next, the State fails to identify authority to support its assertion that it possesses the power to place additional restrictions on the expenditure of federal ARPA funds. As the Supreme Court has held, under the Supremacy Clause, federal Spending Clause legislation trumps conflicting state statutes. See Blum v. Bacon, 457 U.S. 132, 145–46 (1982). State statutes are preempted where Congress's objective was to "ensur[e] local governments the freedom and flexibility to spend the federal money as they saw fit." Lawrence County v. Lead-Deadwood School Dist., 469 U.S. 256, 263 (1985). Further, the expenditures contemplated by BB 61 are lawful given that ARPA is silent on abortion-related expenditures and Congress's rejection of amendments to make ARPA subject to the Hyde Amendment.[1]   167 Cong. Rec. 844. The State's allegations fail because it has not plausibly alleged that BB 61's appropriation of ARPA funds for interstate travel subsidies for lawful abortion procedures is an illegal expenditure of federal funds.

---

[1] Moreover, § 188.205 also is impliedly preempted because it conflicts with the Hyde Amendment by impeding Congress's objective to direct federal funds towards abortions in cases of danger to the life of the mother, rape, or incest where the state participates in federal healthcare-related programs under Medicaid. See Planned Parenthood Affiliates v. Engler, 73 F.3d 634, 638–39 (6th Cir. 1996).

4

Moreover, the Supreme Court has repeatedly invalidated state laws and regulations that conflict with Social Security Act regulations, such as ARPA.[2] See e.g. Blum, 457 U.S. at 145–46; Carleson v. Remillard, 406 U.S. 598, 604, (1972); Townsend v. Swank, 404 U.S. 282, 285 (1971).

Eligible expenditures of Coronavirus Local Fiscal Recovery Funds ("CLFRF") include programs or services that respond to harm or impact caused or exacerbated by the COVID-19 public health emergency or its negative economic impacts. See 31 CRF § 35.6(b)(1). Department of Treasury regulations explicitly prohibit states from interfering with the appropriation of ARPA funds. See § 35.12(d) (prohibiting states from placing "additional conditions or requirements on distributions to nonentitlement units of local government or units of general local government beyond those required by section 603 of the Social Security Act."). Treasury's regulations evince a clear intent that states not interfere with the expenditure of ARPA funds by local governments, even in situations where the State acts as a pass-through entity for such funds.[3]  See City of Columbus v. Ours Garage & Wrecker Serv., 536 U.S. 424, 448 (2002) (Scalia, J. dissenting) (noting that "the Federal Government routinely gives directly to municipalities substantial grants of funds that cannot be reached or directed by 'the politicians upstate' (or 'downstate')").

---

[2] ARPA, P.L. 117–2, amended Title VI of the Social Security Act, which is titled "Coronavirus Relief, Fiscal Recovery, and Critical Capital Expenditure Projects Funds." Section 603 of the Social Security Act is titled "Coronavirus Local Fiscal Recovery Fund" and is codified at 42 U.S.C. § 803. In its Response, the State mistakenly refers to Section 603 of Title VI of the Social Security Act as "42 USC § 603." Doc. 20 at 5. However, section 603 of the Social Security Act, which addresses the "Coronavirus local fiscal recovery fund," is codified at 42 U.S.C. 803. This error is the basis for the State's incorrect assertion that 31 CRF 35.12(a)-(d) "govern welfare payments . . . under [Temporary Assistance for Needy Families funds]—not ARPA payments." Id. citing 42 USC 603(b).

[3]"Nonentitlement units of local government" receive passthrough CLFRE allocations from the state in which they are located. 42 U.S.C. 803(b)(2)(A). The City, however, receives direct CLFRF allocations as both a "metropolitan city" under § 803(b)(1)(B) and as a "county" under § 803(b)(3)(A).

The State goes on to argue that "Treasury's regulations do not inform this Court about Congress's purposes because Treasury, not Congress, wrote them." Doc. 20 at 4. But this argument ignores Congress's express delegation to the Secretary of Treasury "the authority to issue such regulations as may be necessary or appropriate to carry out" the implementation of the Coronavirus Local Fiscal Recovery Fund ("CLFRF"). 42 USCS § 803(f). Indeed, one district court has found such language "gives [Treasury] broad regulatory authority." Ducey, 2022 U.S. Dist. LEXIS 127960 at *20 (noting that Congress made a "clear statement of [its] intent" to give Treasury expansive authority by authorizing Treasury to issue ARPA regulations on the use of state ARPA funds "as necessary or appropriate"); see also State v. Yellen, 2022 U.S. Dist. LEXIS 63392 at *17 (D. N. Tex. March 4, 2022) (noting that Secretary of Treasury has discretion to determine when a State's use of ARPA funds warrants recoupment). Thus, contrary to the State's argument, the Treasury possesses broad discretion to regulate the use of ARPA funds, including the authority to bar states from placing additional conditions or requirements on distributions.

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." Wyeth, 555 U.S. at 607.  Here, Congress evidenced a clear intent to give Treasury expansive authority to regulate the use of ARPA funds, and Treasury, in turn, evidenced an unambiguous intent to afford recipients of CLFRF funds "substantial flexibility . . . to respond to pandemic impacts in their local community." 87 Fed. Reg. 4340 (Jan. 27, 2022). The State's attempt to regulate the City's expenditure of ARPA funds runs afoul of Congress's purpose and is preempted by federal law.

**II.     The State has failed to state a claim because §§ 188.205-215 are facially invalid as impermissibly overbroad and vague under the United States Constitution.**

Next, the State argues Defendants cannot assert a First Amendment overbreadth challenge because they lack standing to bring such a claim. As will be shown, Plaintiff's argument fails.

6

The Supreme Court has routinely held that, under the doctrine of First Amendment overbreadth, a litigant may mount a facial attack on a statute that restricts protected speech even if the litigant's own speech is unprotected. Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973). "The Court has altered its traditional rules of standing to permit -- in the First Amendment area -- 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" Id. citing Dombrowski v. Pfister, 380 U.S. 479, 486 (1965); see also American Booksellers Ass'n, 484 U.S. at 393 (permitting pre-enforcement action of state statute brought by booksellers who alleged an infringement of the First Amendment rights of book buyers); Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 796 (1984) (recognizing exception to standing "for laws that are written so broadly that they may inhibit the constitutionally protected speech of third parties.")

Moreover, the unconstitutionality of a statute is an affirmative defense properly raised in a 12(b)(6) motion. See Manners v. Cannella, 891 F.3d 959, 971–72 (11th Cir. 2018) (argument that the statute is unconstitutional is an affirmative defense); United States v. Smith, 655 F.3d 839, 848 (8th Cir. 2011) (reviewing claim when defendant raised constitutional challenge in motion to dismiss indictment). Accordingly, dismissal pursuant to Rule 12(b)(6) is appropriate here because Defendants have demonstrated that §§ 188.205-215 are, on their face, constitutionally invalid. See also Jones v. Bock, 549 U.S. 199, 215 (2007) (complaint subject to dismissal under Rule 12(b)(6) when affirmative defense appears on its face); A.H. v. Midwest Bus Sales, Inc., 823 F.3d 448, 453 (8th Cir. 2016) (for affirmative defense to provide basis for dismissal under Rule 12(b)(6), affirmative defense must be apparent on face of complaint, which includes public records and materials embraced by the complaint and materials attached to the complaint) (quotations omitted);

see also Mil-Ray v. EVP Int'l, LLC, 2020 U.S. Dist. LEXIS 107588 at *3–18 (D. Ore. Mar. 17, 2020) (dismissing under 12(b)(6) plaintiff's state law claim where court found statute violative of Commerce Clause).

In any event, Plaintiff's argument that Defendants lack standing to assert an overbreadth challenge is incorrect as a matter of law. Plaintiff relies upon Republican Party v. Klobuchar, 381 F.3d 785 (8th Cir. 2004) to support its argument that Defendants have no standing to assert its overbreadth challenge because, it claims, Defendants are not chilled from exercising their First Amendment rights "in order to avoid enforcement consequences." Doc. 20 at 8.

In Klobuchar, the Eighth Circuit found that a state political party lacked standing to assert an overbreadth challenge to a criminal statute because neither the plaintiff nor its members were subject to "a credible threat of prosecution" for engaging in First Amendment activity. 381 F.3d at 793. There, the Eighth Circuit acknowledged that in the context of a facial overbreadth claim, actual injury may exist for standing purposes "even if the plaintiff has not engaged in the prohibited expression as long as the plaintiff is objectively reasonably chilled from exercising his First Amendment right to free expression in order to avoid enforcement consequences." Id. at 792 (citations omitted). The court further explained that "[a] plaintiff suffers reasonable chilling of his First Amendment right to free expression by a criminal statute only if there exists a credible threat of prosecution under that statute if the plaintiff actually engages in the prohibited expression." Id. citing Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298–99 (1979). The Court, however, found that although the plaintiff had "alleged an intention on behalf of itself and its members to engage in a course of conduct arguably affected with a constitutional interest, such course of conduct . . . is not proscribed by" the statute at issue. Id. at 792–93. Accordingly, the plaintiff lacked standing because the statute at issue "contain[ed] no language which can even

8

arguably be construed to" subject the Plaintiff or its members to "a credible threat of prosecution." Id. at 793 citing Babbitt, 442 U.S. at 298. Because the plaintiff failed to show injury in fact, the Court affirmed the district court's dismissal of the facial overbreadth claim.  Id. at 793.

By contrast, here, the State cannot credibly assert that the individual defendants are not subject to a "credible threat" of civil enforcement of §§ 188.205-215 given that they are all *currently defending this lawsuit*. Furthermore, to the extent the State attempts to rely upon the Supreme Court's "discourage[ment]" of First Amendment overbreadth arguments regarding "criminal statutes," this Court should also reject such arguments, as there is no indication §§ 188.205-215 impose criminal penalties. Indeed, the State previously dismissed such possibility, and, regardless, the Supreme Court has consistently considered First Amendment overbreadth challenges. See §§ 188.205-215; see also Transcript of Oral Argument at 8, Webster v. Reprod. Health Servs., 492 U.S. 490 (1989) (No. 88-605) (explaining State "would[ not] view [] violation [of §§ 188.205-215] as a misdemeanor"; acknowledging there is no "operative language" therein imposing penalty for violation); cf. Virginia v. American Booksellers Ass'n, 484 U.S. 383, 393 (1988); see also Broadrick, 413 U.S. at 615–16  (statute unconstitutional where overbreadth of statute real and substantial, when judged in relation to the statute's plainly legitimate sweep).

Next, the State has failed to demonstrate how, in light of Defendants' overbreadth arguments, it has stated a plausible claim that it may regulate the City's expenditure of ARPA funds.  The State asserts Defendants fail to demonstrate §§ 188.205-215 are unconstitutionally broad because the statutes' prohibition on funding "abortion assistance, encouragement, or counseling with ARPA funds does not violate the First Amendment." Doc. 20 at 9.  In support, the State points to Rust v. Sullivan, 500 U.S. 173, 198–99 (1991).  However, Rust is inapposite.  In Rust, the Court concluded the government was able to regulate speech concerning "discussion

9

about abortion" as a means to end a pregnancy, in Title X programs, where such programs were intended to encourage family-planning. Id. at 202–03. In analyzing the petitioner's *viewpoint discrimination* challenge under the First Amendment, the Court concluded that the government was not required to fund a counterpart view when it created programs to "advance certain permissible goals." Id. at 192–93. Here, Defendants do not claim the State has engaged in viewpoint discrimination by creating a program wherein it forbids pro-choice speech, and, even assuming there is such a program, there is no request the State fund any counterpart activity. Instead, this case focuses on the State's attempt to chill officials' and individuals' expressive conduct and speech by the broad and impermissible deployment of §§ 188.205-215 to effectively destroy publicly facilitated pro-choice speech. See Bd. of Airport Comm'rs v. Jews for Jesus, 482 U.S. 569 (1987) (invalidating as overbroad law "reach[ing] the universe of expressive activity"). In support of its arguments, the State asserts that the language at issue—the prohibition on publicly facilitated conduct that "encourages" or "assists" abortion procedures—does not expressly limit protected speech. In doing so, the State ignores the gravamen of any overbreadth argument, i.e., that a law may be unconstitutional (as is the case here) when, by the indiscernibility and sweeping scope of its language, it *effectively*, rather than expressly, prohibits a host of constitutionally protected expressive speech and conduct. See Broadrick, 413 U.S. at 615–16; Schad v. Mt. Ephraim, 452 U.S. 61, 66–67 (1981) (stating that ordinance may serve legitimate interests, but it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms and invalidating ordinance not narrowly drawn to respond to distinctive problems arising from certain types of live entertainment). Indeed, in attempting to narrow the scope of §§ 188.205-215, the State has asserted that the statutes only apply to activity that amounts to "encouraging" or "assisting" abortions. Doc. 20 at 8-9. These

arguments do not demonstrate entitlement to relief, as expressive conduct, such as silent demonstrative protests in publicly funded settings, have long been held to be protected expressive activity.  See Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503 (1969).  Moreover, the state's circular assertions that the statutes are constitutional, because they prohibit only "encouragement" or "assistance" of abortion procedures—the critical language at issue in this case—does little to address the overbreadth concerns that flow from the inherent malleability and vagueness of those terms and the ambiguous dictionary definitions offered by the State.

Next, the State is incorrect in its conclusion that vagueness concerns are only relevant in challenges under the Due Process Clause of the Fifth Amendment. See Reno v.  ACLU, 521 U. S. 844, 871–872 (1997) ("The vagueness of [a content-based regulation of speech] raises special First Amendment concerns because of its obvious chilling effect"); Ashton v. Kentucky, 384 U.S. 195, 200 (1966) (stating that "[v]ague laws in any area suffer a constitutional infirmity" and "[w]hen First Amendment rights are involved, we look even more closely.") The State's remaining arguments—that the terms "encourage" and "assist" do not "require untethered subjective judgment[]" in light of Supreme Court and Eight Circuit jurisprudence—also are unavailing. Specifically, to the extent the State relies on the Supreme Court's conclusion in Holder v. Humanitarian Law Project, 561 U.S. 1, 20 (2010) that the phrase "assistance" did not require subjective judgments to discern its meaning, such reliance is inapposite.  Indeed, in that case the Court noted that "statutory definitions, narrowing context, or settled legal meanings," could clarify certain criminal statutes. 561 U.S. at 20. In doing so, the Court reasoned that language prohibiting, inter alia, assistance of terrorist organizations was not vague because Congress "took care to add narrowing definitions to the [] statute [which] increased the clarity of the statute's terms." Id. at 21. Specifically, the Court concluded Congress's later narrowing definition that "expert advice or

assistance" meant "assistance derived from scientific, technical, or other specialized knowledge," reduced any potential vagueness concerns. Id.  This case presents the opposite scenario. Rather than offering consistently clearer and narrowing definitions of what the State admittedly characterizes as "broad" terms (Doc 7 at 4-5), it has instead offered inconsistent and *expanded* definitions of "encourage" and "assist."  Indeed, as shown in Defendants' response to the State's motion preliminary injunction, the State has retreated from the prior narrower representations it made to the Eight Circuit and Supreme Court that the relevant language only applied to direct participation or assistance of an abortion procedure, and now seek to expand §§ 188.205-215's scope to include a much broader set of activity, outside of the direct performance or assistance of a procedure.  Doc. 23 at 13.  Regardless, even assuming the Eight Circuit's decision in Reproductive Health Serv. v. Webster[4] that §§ 188.205-215's prohibition on use of public funds, employees, and facilities to encourage abortions was void for overbreadth and vagueness is no longer binding authority,[5] that would not change the fact that the State's interpretation of §§ 188.205-215 in that case demonstrates its inability to consistently discern the scope of those statutes, and that their meaning is subject only to the State's subjective judgment. See 851 F.2d at 1083–84.  Accordingly, those statutes evade reasonably objective meaning and are vague.

Further, the State's reliance on Adam & Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 958 (8th Cir. 2019), to support its argument that the "assist" and "encourage" language at issue here passes constitutional muster, such reliance is unpersuasive.  Specifically, the Eighth Circuit concluded the language at issue in that case regarding stores that sold "sexually-related items as

---

[4] 851 F.2d 1071, rev'd in part on other grounds, 492 U.S. 490 (1989).

[5] The Supreme Court's holding in Webster, left undisturbed, and discerned no error, with the Eight Circuit's analysis as to the vagueness of §§ 188.205-215, and vacated the Eighth Circuit's opinion in that regard on mootness grounds that developed at the appellate level. 492 U.S. at 512.

'one [] of its *principal* business purpose[s],'" was not vague, as the prohibition on vague language did not require the level of specificity appellants there argued. Id. at 959. Specifically, the Court reasoned that the parties agreed with the definition of the term "principal," and that, regardless, other courts had drawn similar conclusions as to the phrase's meaning. Id. at 958. Here, Defendants have not expressly accepted the State's definition of the phrases "encourage" and "assist," indeed, the meaning and scope of those phrases is the central focus of this litigation. Moreover, the burdensome precision demanded by appellant in Adam and Eve—rooted in its argument that "principal business purpose" required quantifiable terms such as "floor space, gross revenue, net revenue," etc.—is not similar to the arguments here. Id. at 956. Indeed, there, the Eighth Circuit reasoned that laws should be afforded a certain level of "flexibility," where "it is clear what the [statute] as a whole prohibits," in that case, the substantial sale of sexually-related materials. Id. at 958. Here, it is not clear what the statutes at issue prohibit. Moreover, the degree of flexibility argued by the State strains the scope of the law to its constitutional breaking point, as the flexibility argued for in this case—the application of the State's dictionary definitions of "encourage" and "assist"—does little to clarify what conduct is proscribed.

Finally, to the extent the State asserts that Defendants failed to demonstrate insufficiency of the State's claims, because the State alleged BB 61 §§ 1-2 includes conduct "clearly" proscribed, by its "dictionary definition[s]," as those sections "issue ARPA funds for the purpose of performing, assisting, encouraging, or counseling abortions," such arguments are conclusory, self-serving, and do not demonstrate a plausible entitlement to relief. Taylor v. Yee, 780 F.3d 928, 935 (9th Cir. 2015) (Rule 12(b)(6) motions tests whether there is a cognizable legal theory or sufficient facts to support a cognizable legal theory). Indeed, as stated by the plain text of BB 61—which the State has attached to its Complaint—ARPA funds are only permitted to be directed towards the

13

subsidization of logistical support such as interstate travel costs related to reproductive healthcare. BB 61 expressly prohibits funds from being spent with the purpose of directly assisting or encouraging an abortion procedure. Outside of the State's strenuously broad and historically inconsistent definitions of what activity constitutes "assisting" or "encouraging" abortion procedures, the State offers no specific authority or compelling and non-conclusory arguments that such definitions alone, coupled with the text of BB 61, demonstrate Defendants have engaged in unlawful conduct. Additionally, if the State seeks to characterize its claims as arising under §§ 188.205-215's prohibition on the *performance* of abortion procedures, such challenge is not properly before this Court, as the State raised no allegation of an unlawful abortion procedure in its Complaint. Accordingly, §§ 188.205-215 are facially invalid as overbroad and vague.

**III.     The State fails to state a claim because §§ 188.205-215, as applied to BB 61, are unconstitutional under Mo. Const. Art. VI §§ 16 & 19(a).**

The State also argues that Art. VI, § 16 and § 19(a) are not a basis to dismiss this lawsuit because: (1) §§ 188.205-215 do not permit the City to violate State law, and (2) there is no "contract" as contemplated by Art. VI, § 16. Doc. 20 at 14-15. However, the only cases on which the State relies, Sch. Dist. of Kansas City v. Kansas City, 382 S.W.2d 688, 692–693 (1964) and City of St. Louis v. Grimes, 630 S.W.2d 82 (Mo. 1982), are inapposite. In short, Kansas City and Grimes are distinguishable because: (1) §§ 188.205-215 are preempted by federal statute; (2) the State cannot regulate expenditure of federal funds for interstate travel; and (3) there is no conflict, in any event, because BB 61 prohibits the use of funds "to fund or assist abortion procedures" or "to encourage or counsel an individual to have an abortion." Doc. 1-3 at 55.

The State argues that Art. VI, § 16 "does not apply here because the City has not made a 'contract' with the United States as required by both article VI, section 16 and § 70.220 RSMo." Doc. 20 at 15. However, the City's receipt of ARPA funds is pursuant to a federal spending statute,

14

therefore, at least according to the Supreme Court, "is much in the nature of a contract." See Cummings v. Premier Rehab Keller, P.L.L.C., 142 S. Ct. 1562, 1570 (2022) citing Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17 (1981). Because Spending Clause statutes "condition[] an offer of federal funding" on recipient's agreement to abide by the terms of the statute, that arrangement "amounts essentially to a contract between the Government and the recipient of funds." Id. at 1570 (citation omitted). Here, ARPA falls within Congress's spending power, and the City's receipt of ARPA funds and its acceptance of the requisite terms and conditions is akin to contractual agreement between the Federal government and the City. The State's argument with regard to Art. VI, § 16 therefore must fail.

Importantly, as established, BB 61 does not, on its face, conflict with §§ 188.205-.215 because they do not expressly proscribe cooperating with the United States to provide travel-subsidies related to lawful interstate abortion access. To the extent the State's unconstitutionally broad interpretation of the term "assist" creates a conflict between §§ 188.205-.215 and BB 61, the statutes must yield to the City's power pursuant to Art. VI, § 16 to cooperate with the United States in the distribution and expenditure of federal CLFRF funds.

While there are circumstances in which an ordinance may be invalided on the basis it conflicts with state statute, this is not one.  Art. VI, § 19(a) grants to a constitutional charter city "all the power which the legislature could grant." Cape Motor Lodge v. City of Cape Girardeau, 706 S.W.2d 208, 210 (1986) (citation omitted). Here, the City has a *constitutionally conferred* power to  "contract and cooperate with . . . the United States" for the purpose of developing a public service, i.e., administration of the Reproductive Equity Fund. State statutes cannot limit powers conferred by the constitution.  See State ex rel. Nixon v. Kinder, 89 S.W.3d 454, 456 (Mo. banc 2002) (statute that conflicts with constitutional provision is invalid).  This Court should find

the State fails to state a claim because BB 61 does not conflict with §§ 188.205-.215, or alternatively, because §§ 188.205-215 amount to unconstitutional limitations on the City's constitutionally conferred powers.

Dated:  August 31, 2022

Respectfully submitted,

**SHEENA HAMILTON**
**CITY COUNSELOR**

By: _____/s/ Erin K. McGowan_____
Erin McGowan                                    #64020MO
*Associate City Counselor, Affirmative Litigation Unit*

Ankoor Shah                                    #65606MO
Rebecca S. Sandberg-Vossmeyer    #70342MO
Adam Sheble                                    #74230MO
*Assistant City Counselors, Affirmative Litigation Unit*

314 City Hall
1200 Market St.
St. Louis, Missouri 63103
(314) 622-3361 (telephone)
(314) 622-4956 (facsimile)
mcgowane@stlouis-mo.gov
shaha@stlouis-mo.gov
vossmeyerr@stlouis-mo.gov
sheblea@stlouis-mo.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on **August 31, 2022** this Reply Memorandum was electronically filed with the Clerk of Court using the Court's electronic filing system, to be served on all counsel of record.

/s/ Erin K. McGowan