UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE STATE OF MISSOURI ex rel.<br>ERIC S. SCHMITT,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE CITY OF ST. LOUIS, et al.<br><br>    *Defendants*. | Case No. 4:22-cv-00789-AGF |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

COME NOW the City of Saint Louis, the Honorable Darlene Green – Comptroller for the City of St. Louis, the Honorable Adam Layne – Treasurer for the City of St. Louis, and Dr. Matifadza Hlatshwayo Davis – Director of Health for the City of St. Louis (collectively, "Defendants") in reply to the State of Missouri's Motion to Remand (Doc. 19), and state as follows:

**I.   BACKGROUND**

The American Rescue Plan Act ("ARPA") was enacted by Congress in March 2021, establishing a local fiscal recovery fund, providing that, through December 31, 2021, local governments may use the recovery funds "to cover costs incurred" to, among other things, "respond to the public health emergency with respect to the [COVID-19 pandemic] or its negative economic impacts…" Pub. L. No. 117-2, 135 Stat. 4 (2021) (codified at 42 U.S.C. § 803). 31 CFR § 35 implements section 9901 of ARPA, which amends Title VI of the Social Security Act (42 U.S.C. § 801, et seq.) by adding sections 602 and 603 to establish the Coronavirus State Fiscal Recovery Fund and the Coronavirus Local Fiscal Recovery Fund ("CLFRF"), establishing a fund

1

for metropolitan cities, nonentitlement units of local government, and counties. Federal CLFRF funds are not subject to the Hyde Amendment, which restricts the use of federal funds for abortions except under certain specified circumstances. 167 Cong. Rec. 844.

On January 27, 2022, the Department of Treasury promulgated final rules to guide in the implementation of, and identify categories of, eligible uses for federal ARPA funds. 87 Fed. Reg. 4338 (Jan. 27, 2022). The final rule provides that the State Local Recovery Funds provide "substantial flexibility to recipients to respond to pandemic impacts in their local community." Id. at 4340. The final rule further states, "[t]his flexibility is designed to help state, local and Tribal governments adapt to the evolving public health emergency and tailor their response as needs evolve and to the particular needs of their communities." Id. The eligible uses for CLFRF funds are set forth in subpart A of 31 CFR § 35. See 31 CFR § 35.6 (stating broadly that program or service is eligible for funds "if a recipient identifies a harm or impact to a beneficiary or class of beneficiaries caused or exacerbated by the public health emergency or its negative economic impacts" and the program or services "responds to such harm"). The regulation further provides, as relevant, that a State "may not place additional conditions or requirements on distribution to…units of general local government beyond those required by section 603 of the Social Security Act or this subpart." 31 CFR § 35.12(d).

On July 15, 2022, the City of St. Louis Board of Alderman enacted BB 61, which among other things, appropriates federal CLFRF funds, allocated to the City pursuant to 42 U.S.C. § 803, for the purpose of establishing a "Reproductive Equity Fund." Specifically, BB 61 states that CLFRF funds "will not be used to fund or assist abortion procedures nor shall funds be used to encourage or counsel an individual to have an abortion." Doc.1-3 at 55. Pursuant to the requirements in 42 U.S.C. § 803(c)(1), BB 61 provides for the expenditure of $1.5 million in "State

and Local Fiscal Recovery Funds" under ARPA, to establish a "Reproductive Equity Fund" dedicated "to logistical support" of reproductive healthcare access. BB 61 identifies beneficiaries and populations disproportionally affected by the COVID-19 public health crisis and its negative economic impacts, including people experiencing economic insecurity below the federal poverty line and uninsured individuals. Id. BB 61 appropriates $1,000,000 of CLFRF funds appropriated to the City to the Department of Health for establishing a process to allocate the funds to community partners through Reproductive Equity Fund grants. Id. BB 61 further appropriates $500,000 of CLFRF Funds appropriated to the City to the Department of Health for the purpose of establishing a process to allocate the funds to community partners through grants as part of a Reproductive Equity Fund "dedicated to community needs." Id. at 56. BB 61 appropriates $250,000 of CLFRF Funds appropriated to the City to the Department of Health for "administrative oversight and evaluation for the Reproductive Equity Program and Fund." Id.

On July 21, 2022, the State of Missouri, acting through its Attorney General, Eric Schmitt (herein referenced as the "State"), filed its four-count Complaint against Defendants in the Twenty-Second Judicial Circuit Court of Missouri, styled as State of Missouri, ex rel. Eric S. Schmitt v. City of St. Louis, et al., Cause No. 2222-CC08920. See generally Doc. 6. The State's Complaint alleges, that the City has received federal "ARPA funds;" that on July 21, 2022, the City enacted Board Bill 61, which established a "Reproductive Equity Fund"; and, that the Reproductive Equity Fund was funded "with $1.5 million in ARPA funds." See Doc. 6, Compl., ¶¶ 39, 41.

On or about July 27, 2022, Defendants timely removed this matter to this Court. Doc. 1. Removal of this action to this Court is proper, in that there exists a federal question presented on the face of the Complaint. On August 19, 2022, the State filed its Motion to Remand Case to State

Court and Memorandum in Support. Doc. 18, 19. In its Memorandum (Doc. 19), the State argues that all four-counts of the State's Complaint arise solely under Missouri law, and by implementing BB 61, Defendants violate Missouri law "by using taxpayer-funded resources to support, encourage, and assist out-of-state abortions." Doc. 19 at 4. As demonstrated below, the State's Motion to Remand must be denied. This Court has proper subject matter jurisdiction over the State's claims against Defendants because the requirements of 28 U.S.C. § 1331 have been met, the State asserts a federal question on the face of the Complaint and the State's right to relief necessarily depends on resolution of a substantial question of federal law.

## II. LEGAL ARGUMENT

Federal question jurisdiction exists in "all actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, specifically those actions where "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Biscanin v. Merrill Lynch & Co., Inc., 407 F.3d 905, 908) (8th Cir. 2005) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27–28 (1983)). Whether a defendant may remove a case based on federal-question jurisdiction is determined by the "well-pleaded complaint" rule. Franchise Tax Bd., 463 U.S. at 9. Under the well-pleaded complaint rule, a case is ordinarily not removable on federal question grounds unless the federal question is presented on the face of the plaintiff's complaint. Chaganti & Assoc., P.C. v. Nowotny, 470 F.3d 1215, 1220 (8th Cir. 2006) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)).

District Courts also have jurisdiction when a "state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 312, 314 (2005); see also Great

4

Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC, 843 F.3d 325, 329 (8th Cir. 2016) ("Federal question jurisdiction exists if…the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."). Grable does apply here because the State's claims necessarily raises a substantial federal issue.

Counts I-IV of the Complaint allege the State has the power to place restrictions on the appropriation and expenditure of federal ARPA funds in BB 61; and to otherwise prohibit the City's appropriation and expenditure of federal ARPA funds by virtue of state law. Doc. 6, Compl. at 8-13. In other words, BB 61 was the catalyst for this lawsuit and is based upon the appropriation and expenditure of federal ARPA funds, i.e., the regulation of federal funds is the core issue in this case; therefore, there is a contested federal issue which is both substantial and implicates a serious federal interest. Grable, 545 U.S. at 312; County of St. Charles v. Missouri Family Health Council, 107 F.3d 682, 684 (8th Cir. 1997) (held that petition seeking declaration concerning appropriation of federal funds contains federal question and district court properly declined to remand the case); see also Lawrence County v. Lead-Deadwood School Dist., 469 U.S. 256, 270 (1985) (held that state legislation limiting manner in which local governments may spend federal funds obstructs congressional purpose and runs afoul of Supremacy Clause). While the State contends that the inclusion of these facts does not create a federal issue, there is no doubt that this case presents a national interest in providing a federal forum for litigating the permissible uses of CLFRF funds in order to respond "to the public health emergency with respect to the [COVID-19 pandemic] or its negative economic impacts…"[1] that supports the exercise of federal question jurisdiction over the disputed issue on removal. Grable, 545 U.S. 308 at 312.

---

[1] Pub. L. No. 117-2, 135 Stat. 4 (2021) codified at 42 U.S.C. § 803.

A plaintiff necessarily raises a stated federal question when a federal issue is an essential element of one of its claims. Id. at 315. In Grable, the Court held that the plaintiff's quiet title claim necessarily raised a stated federal issue when the plaintiff based its claim to superior title on the IRS's alleged failure to give proper notice before seizing property to satisfy a tax deficiency. Id. at 314–315. The issue the Court had to resolve was whether a state law claim necessarily raises a stated federal issue, "actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 2368. Here, as in Grable, this Court should answer in the affirmative— yes, a claim that raises a stated federal issue (use of federal ARPA funds), which is actually disputed and substantial, would not disturb any congressionally approved balance of federal and state judicial responsibilities. Id. Based upon the State's own assertion in its Memorandum to Remand, that it pled the City is expending ARPA funds "to show that the City is using 'public funds' to pay for abortion-related logistical support, which is a critical element of § 188.205, RSMo." (Doc. 19 at 4), it is evident that the Complaint raises a federal question. In fact, the City's use of ARPA funds is a "***critical element***" of the State's claims. Id. (emphasis added). Thus, the State's own argument concedes that the use of public funds—ARPA funds—is a critical element in this lawsuit. Id. The court who hears the claims in this Complaint will be required to determine whether the State has the authority to usurp Congress' Spending Power in order to decide this case as pled in the State's Complaint. The State cannot ignore or side-step the reality that the use of federal public funds is a federal question that confers federal jurisdiction under 28 U.S.C. § 1331. The question is a federal question properly decided by a federal court.

In St. Charles, 107 F.3d 682, the Eighth Circuit reasoned the case clearly arose under federal law because the face of the petition contained a federal question of whether a parental consent policy may be a basis for denying the application of federal funds; and, the relief being

sought was a declaration that the plaintiff is eligible to receive federal funds. Id. at 684. Similarly, here, the face of the State's Complaint contains the federal question of whether BB61's appropriation of federal ARPA funds is unconstitutional. See Doc. 6 at 7. The relief which the State seeks is a declaration that the City's actions to earmark federal ARPA funds to provide logistical support for interstate travel to seek reproductive healthcare are "unconstitutional, unlawful, and/or ultra vires.'" Doc. 19 at 14. Therefore, based on the face of the Complaint and the State's own assertion that the use of ARPA funds is a "critical element" in establishing its claims, this Court has federal-question jurisdiction over the State's claims and should deny the State's request to remand. St. Charles, 107 F.3d 682 at 684.

### III.     CONCLUSION

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Court deny the State's Motion to Remand, and for any further relief this Court deems appropriate under the circumstances.

Dated: September 2, 2022						Respectfully submitted,

**SHEENA HAMILTON**
**CITY COUNSELOR**

By: */s/ Rebecca S. Sandberg-Vossmeyer*

Erin McGowan                                                          #64020MO
*Associate City Counselor, Affirmative Litigation Unit*

Ankoor Shah                                                              #65606MO
Rebecca S. Sandberg-Vossmeyer                          #70342MO
Adam Sheble                                                            #74230MO
*Assistant City Counselors, Affirmative Litigation Unit*

314 City Hall
1200 Market St.
St. Louis, Missouri 63103
(314) 622-3361 (telephone)
(314) 622-4956 (facsimile)
mcgowane@stlouis-mo.gov
shaha@stlouis-mo.gov
vossmeyerr@stlouis-mo.gov
sheblea@stlouis-mo.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2022 **Defendants' Memorandum in Opposition to Plaintiff's Motion to Remand to State Court**, was electronically filed with the Clerk of Court using the Court's electronic filing system, to be served on all counsel of record.

*/s/* Rebecca S. Sandberg-Vossmeyer