# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DISTRICT

| | |
|---|---|
| THE STATE OF MISSOURI ex rel. ERIC S. SCHMITT; <br><br> *Plaintiff*, <br><br> v. <br><br> THE CITY OF ST. LOUIS; <br><br> ADAM L. LAYNE, TREASURER OF ST. LOUIS CITY; <br><br> DARLENE GREEN, COMPTROLLER OF ST. LOUIS CITY; and <br><br> DR. MATI HLATSHWAYO DAVIS, DIRECTOR OF HEALTH OF ST. LOUIS CITY, <br><br> *Defendants*. | Case No. 4:22-cv-00789 |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1

Plaintiff State of Missouri, by and through counsel, submits its reply to the State's Motion for Preliminary Injunction.

**I. Missouri is likely to succeed on the merits of its claim.**

In their Opposition, Defendants argue that this Court should not issue a preliminary injunction because the State is unlikely to succeed on the merits of its claims against the City for several reasons. For the following reasons, the City's arguments on this topic all fail.

**A. Section 188.205 does not violate the Supremacy Clause.**

First, Defendants argue that § 188.205 violates the Supremacy Clause. It does not. "Federal preemption of state law can occur" in three ways: express preemption, field preemption, or conflict preemption. *Soo Line R.R. Co. v. Werner Enter.*, 824 F.3d 413, 420 (8th Cir. 2016). By arguing that § 188.205 "stands as an obstacle to the accomplishment an execution of the full purposes and objectives of Congress" in passing ARPA, Opp. at 7 (Dkt. No. 23), the City invokes conflict preemption. *Soo Line*, 825 F.3d at 420. "Whether a particular state law constitutes a sufficient obstacle and, therefore, is preempted "is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id*. But courts "start with the assumption that the historic police powers of the States were not to be superseded by" federal law "unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *see also Soo Line*, 825 F.3d at 420. The States' police powers are those that "state[s] did not surrender when becoming a member of the Union under the Constitution," including "such reasonable regulations…as will protect the public health and the public safety." *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905).

Here, the City claims that the State may not use § 188.205 to enjoin the City from expending ARPA funds pursuant to BB61 because this use of § 188.205 is conflict preempted by

ARPA, 42 U.S.C. § 803(c)(1).  Opp. 7-8.  Under BB61 § 1, the City appropriated $1 million in ARPA funds to establish a "Reproductive Equity Fund" that "will be used to provide access to abortion through logistical support including but not limited to the funding of childcare, transportation, and other logistical support needs."  Pet. Ex. at 40 (Dkt. No. 6-1).  Under BB61 § 2, the City appropriated $500,000 in ARPA funds to establish a "Reproductive Equity Fund" that "will support infrastructure and operations for organizations already provided direct service to reproductive healthcare access in the region including access to doulas and lactation support," but does not state that it will not support abortions or abortion logistical support.  *Id*. at 41.  Section 188.205 prevents governments from expending public funds for the purpose of performing or assisting an abortion or for the purpose of encouraging or counseling a woman to have an abortion.

ARPA § 803(c)(1) places limitations on the use of ARPA funds, stating that: "a metropolitan city…***shall only use the funds*** provided under a payment made under this section to cover costs incurred by the metropolitan city…by December 31, 2024" and only insofar as those costs fit within four limited provisions in § 803(c)(1)(A)-(D).  42 U.S.C. § 803(c)(1)(A)-(D).  One of these limitations permits ARPA funds to cover costs "to respond to the public health emergency with respect to [COVID] or its negative economic impacts, including assistance to households, small businesses, and nonprofits, or aid to impacted industries such as tourism, travel, and hospitality[.]"  42 U.S.C. § 803(c)(1)(A).  In response to this statute, the U.S. Department of the Treasury ("Treasury") issued regulations governing ARPA implementation.  *Coronavirus State and Local Fiscal Recovery Funds*, 87 Fed. Reg. 4338, 4338 (2022).  In 31 CFR § 35.6(b), the regulations clarify 42 U.S.C. § 803(c)(1)(A) by defining what constitutes "[r]esponding to the public health emergency or its negative economic impacts."

There is a presumption that 42 U.S.C. § 803(c)(1) does not preempt § 188.205, RSMo, because § 188.205 concerns abortion—a part of Missouri's police powers that were "not surrender[ed] when becoming a member of the Union under the Constitution." *See Jacobson*, 197 U.S. at 25; *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2284 (2022). Section 188.205, RSMo, is also part of Missouri's police powers because it relates to "public health and safety" for pregnant women and unborn children. *See Jacobson*, 197 U.S. at 25; *see also* § 188.010.

Further, there is no basis for finding that § 188.205 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in 42 U.S.C. § 803(c)(1). *See Soo Line*, 825 F.3d at 420. Nothing in § 803(c) indicates that municipalities need not abide by State (or local) law when spending ARPA funds. Contrary to the City's arguments, the text of § 803(c) does not demonstrate "intent by Congress to provide flexibility to fund recipients to respond to pandemic impacts in a manner consistent with the particular needs of their communities[,]" Opp. at 7-8, because it does indeed provide limitations. First, § 803(c)(1) *limits* cities' use of ARPA funds to "cover[ing] costs incurred by the…city…by December 31, 2024." Nothing in this section suggests that a City may violate State law in incurring these costs. Then, § 803(c)(1)(A)-(D) *further limits* what "costs incurred" may be reimbursed with ARPA funds to—among other enumerated things—costs incurred to respond to the COVID-19 public health emergency or its negative economic impacts. Again, nothing in the statute suggests that the City need not comply with State law or, for that matter, its own ordinances, in using ARPA funds. The City argues the contrary, pointing to regulations in 31 CFR 35.6(b) and 87 Fed. Reg. 4340, but to no avail. *See* Opp. 5-6. First, Treasury's regulations do not inform this Court about Congress's purposes because Treasury, not Congress, wrote them. *Oklahoma v. Castro-Huerta*, 142 S. Ct.

4

2486, 2496 (2022) ("Congress expresses its intentions through statutory text passed by both Houses and signed by the President (or passed over a Presidential veto)."). Second, neither regulation shows that even Treasury intended to permit municipalities to use ARPA funds in a way that violates State or local law. For instance, in 31 CFR 35.6(b), the Department of the Treasury only further defines the phrase "[r]esponding to the public health emergency or its negative economic impacts" in 42 U.S.C. § 803(c)(1)(A). And 87 Fed. Reg. 4340 does not permit cities to violate their State's laws in spending ARPA funds. Rather, it clarifies that the rule "provide[s] substantial flexibility…to help state, local, and Tribal governments adapt…and tailor their response…to the particular local needs of their communities." Not only are the particular local needs of Missourians informed by the General Assembly's statutes—but they expressly exclude abortions. *See* Mo. Const. art. VI, § 19(a) (Charter cities cannot violate Missouri statutes); § 188.010(2) ("[T]he state and all of its political subdivisions are a 'sanctuary of life' that protects pregnant women and their unborn children"); §§ 188.205-.215. Additionally, the City's interpretation would violate the regulation's purpose—to help local *and state* governments adapt and tailor their response to the particular local needs of their communities—by *prioritizing* local governments over States.

### B. Sections 188.205-.215 are not overbroad or vague under the First Amendment.

Second, Defendants argue that §§ 188.205-215 are overbroad and vague under the First Amendment. They are not. As to overbreadth, the City claims that §§ 188.205-.215 are "so unclear—and the State's characterization and understanding of their application so sweeping—that they prohibit a multitude of protected First Amendment activity[,]" so they should be ruled unconstitutional in their entirety. Opp. at 10. The City does not contend that the State's construction of §§ 188.205-.215 violates the First Amendment as applied to BB61. Rather, it argues that the Court cannot apply the statutes *here* because they may violate the First Amendment

5

in *other situations*. *See* Opp. at 11 ("the State's interpretation of the terms 'assist' and 'encourage' evinces the statutes' malleability and potential to be weaponized against expression wholly unrelated to the performance of a particular abortion procedure."). The City goes on to list examples where the State's interpretation of §§ 188.205-.215 "could" "in the future" violate the First Amendment, *id*. at 10-11, but they do not allege any actual injury.

"In the First Amendment context, [courts] recognize a unique species of facial challenge, under which a law may be overturned as impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Sisney v. Kaemingk*, 886 F.3d 692, 698-99 (8th Cir. 2018). "The aim of facial overbreadth analysis is to eliminate the deterrent or chilling effect an overbroad law may have on those contemplating conduct protected by the First Amendment." *Klobuchar*, 381 F.3d at 791. "Thus, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *Id*. Nonetheless, the Supreme Court has noted that facial challenges to criminal statutes on First Amendment overbreadth grounds are "especially to be discouraged" because "they entail a further departure from the norms of adjudication in federal courts" including "relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances than those at hand." *Id*. "Standing is the threshold question in determining whether a federal court may hear a case." *Id*. "Thus, a party invoking federal jurisdiction" for a First Amendment facial overbreadth claim "has the burden of establishing standing," including "actual injury." *Id*. "With regard to a First Amendment facial-overbreadth claim, actual injury can exist for standing purposes…as long as

6

the plaintiff is objectively reasonably chilled from exercising his First Amendment right to free expression in order to avoid enforcement consequences." *Id*.

Here, Defendants' overbreadth claim fails because they lack standing to bring it. The City and its officials are not injured for standing purposes because they are not "objectively reasonably chilled from exercising [their] First Amendment rights to free expression in order to avoid enforcement consequences," as §§ 188.205-.215 prohibit unprotected government actions and speech, not protected private speech. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 468 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."). Section 188.205 clearly prohibits government actions and speech by prohibiting public funds from being "expended for the *purpose* of performing or assisting an abortion" or "for the *purpose* of encouraging or counseling a woman to have an abortion not necessary to save her life." This does not restrict protected private speech because the statute addresses only the government's purpose in expending funds. Section 188.210 also only limits government conduct and speech because it prohibits public employees acting as such (not private citizens) from performing or assisting abortions and encouraging or counseling a woman to have an abortion. Section 188.215 only limits government conduct and speech because it prohibits the government from using public facilities to perform or assist abortions or using public facilities for the purpose of encouraging or counseling a woman to have an abortion. If there are two fair ways to read one of these statutes—one that unlawfully prohibits protected private speech and another that implicates only unprotected speech, this Court should read the statute in the way that makes it constitutional. *See Blaske*, 821 S.W.2d at 838-39. Further, with respect to § 188.205, governments may restrict even private individuals' use of public funds without violating even private free-speech rights. *See, e.g.*, *Rust v. Sullivan*, 500 U.S. 173, 181, 198-99 (1991)

7

(prohibiting individuals voluntarily employed for a Title X project from counseling and referring women to have abortions without violating the First Amendment). So too here. Thus, the City has no standing to bring a facial overbreadth challenge.

As to vagueness, the City claims that §§ 188.205-.215 are unconstitutionally vague under the First Amendment because "they provided no standard or rule for enforcement." Opp. at 12. "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304 (2008). The City cannot bring this challenge because cities do not have due-process rights. *Committee of Educ. Equality v. State*, 878 S.W.2d 446, 450 n.3 (Mo. 1994) (political subdivisions are not considered "persons" having due-process rights); *see also Bd. of Educ. of City of St. Louis v. Mo. State Bd. of Educ.*, 271 S.W.3d 1, 14 (Mo. banc 2008) (same, and noting that "[v]oid for vagueness constitutional claims are grounded in due process rights, which the city board does not possess").

Courts "consider whether a statute is vague as applied to the particular facts at issue, for a plaintiff who engages in some conduct that is clearly proscribed cannot complain of vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (cleaned up). And a plaintiff "certainly cannot [complain of vagueness] based on the speech of others." *Id*. at 20. "[W]hen a statute interferes with the right of free speech or association, a more stringent vagueness test should apply," but "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id*. at 19.

An as-applied vagueness challenge on the basis of BB61 § 1—which instructs the City "to provide access to abortion through logistical support"—fails because the City's statute clearly fits inside the dictionary definition of "assisting" an abortion under § 188.205. *See Holder*, 561 U.S. at 18-19 (vagueness as-applied standard); *Assist*, Webster's Third New International Dictionary

8

132 (2002) ("assist" means "to give support or aid"); *Gross v Parson*, 624 S.W.3d 877, 884 (Mo. 2021) (undefined statutory terms given dictionary definition). A vagueness challenge on the basis of BB61 § 2—which instructs the City to "support infrastructure and operations for organizations already providing direct services to support reproductive healthcare access in the region" but fails to exclude funds for performing, assisting, encouraging, or counseling abortions—also fails. The State has sued to prevent the City from implementing BB61 § 2 in a way that violates §§ 188.205-.215. To the extent the City wishes to use BB61 § 2 to issue ARPA funds for the purpose of performing, assisting, encouraging, or counseling abortions, this "conduct [] is clearly proscribed" by §§ 188.205-.215. Thus, the City's void-for-vagueness challenge fails.

The City claims that the Eighth Circuit already has determined that the prohibition on "encouraging" abortions in Chapter 188 is void for vagueness. Opp. at 13. But the Eighth Circuit's prior case, *Reproductive Health Services v. Webster* (*Webster I*), does not control here. 851 F.2d 1071 (8th Cir. 1988); Opp. at 13-14. In *Webster I*, the Eighth Circuit held that §§ 188.205-.215's restrictions on using public funds, public facilities, and public employees to "encourage or counsel" a woman to have an abortion was void for vagueness. 851 F.2d at 1077. The Supreme Court vacated this holding with respect to § 188.205 in *Webster v. Reproductive Health Services* (*Webster II*). 492 U.S. 490, 512-13 (1989). Thus, *Webster I* does not control this Court's holding with respect to § 188.205, or with respect to § 188.205's prohibition on *assisting* abortions (which *Webster I* did not address). With respect to §§ 188.210 and .215, in *Webster I*, the Eighth Circuit held that the prohibition on "encouraging or counseling" implicated "both first and fourteenth amendment rights of both physicians and their patients: the right to disseminate and receive information about abortion, and the right to knowingly and intelligently choose an abortion after consulting a physician." 851 F.2d at 1078. It therefore applied the following vagueness test to

9

"encouraging": "whether the statute is sufficiently precise to serve the goals of fair notice and fair enforcement." *Id*. at 1077-78.

But the law has changed in multiple ways since *Webster I*. First, the Supreme Court has since clarified that vagueness is properly determined as-applied first, and a plaintiff whose conduct is not clearly proscribed cannot complain the law is vague as applied to the conduct of others. *Holder*, 561 U.S. at 18-19. Because *Webster I* did not address whether the plaintiffs' conduct was clearly proscribed, it reached the question whether the law was facially vague without a basis on which to do so. *See id*. Second, *Webster I* was decided before the Supreme Court's determination in *Holder* that the terms "training" and "expert advice or assistance" did not require "untethered, subjective judgments" in the First Amendment context and therefore were not unconstitutionally vague. *Id*. Because *Holder*'s guidance on what constituted "untethered, subjective judgments" would have changed the outcome in *Webster I*, *Webster I*'s holding that "encourage" is unconstitutionally vague in §§ 188.210 and .215 do not control the outcome of this case. This Court's actions are controlled, first and foremost, by the Supreme Court, not by the Eighth Circuit. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 942 (2015) (federal courts are bound by the Supreme Court's holdings); *see also United States v. Taylor*, 803 F.3d 931, 933 (8th Cir. 2015) (per curiam) (holding that Eighth Circuit panels are not bound by prior Eighth Circuit precedent "when the earlier panel decision is cast into doubt by an intervening Supreme Court decision").

### C. Sections 188.205-.215 do not violate Art. VI, §§ 16 or 19 of the Missouri Constitution.

Third, the City argues that §§ 188.205-215, as applied to BB 61, violate Art. VI, Section 16 and 19(a) of the Missouri Constitution. They do not. Article VI, § 16 of Missouri's Constitution permits municipalities to "contract and cooperate…with the United States for planning, developing, constructing, acquiring, or operating a common service *in the manner provided by*

10

*law*." (emphasis added).  The "manner provided by law" is set forth in § 70.220, RSMo., *Sch. Dist. of Kansas City v. Kansas City*, 382 S.W.2d 688, 692 (1964), which states that the "contract or cooperative action made and entered into by such municipality…shall be within the scope of the powers of such municipality."  Thus, a municipality must follow laws passed by the General Assembly.  *Id*. at 692-93 ("[A City] Charter must give way to…state laws in regard to governmental functions or general policies of statewide concern"); *City of St. Louis v. Grimes*, 630 S.W.2d 82, 83 (Mo. 1982) ("[T]he state has the right in the exercise of the police power to prescribe a policy of general state-wide application which applies to special charter cities.").  Additionally, Article VI, § 16 does not apply here because the City has not made a "contract" with the United States, as required by both Art. VI, § 16 and § 70.220, RSMo.  Even if there was a contract, the City would need to show this through evidence, which it has not.

Art. VI, § 19(a) also provides that a Charter City's powers cannot conflict with Missouri statutes.  Art. VI, § 19(a) ("Any city…shall have all powers which the general assembly…has authority to confer…, provided such powers are consistent with the constitution of this state and are not limited or denied…by statute."); s*ee also Kansas City*, 382 S.W.2d at 692-93 (holding that a city "Charter must give way to…state laws"); *Grimes*, 630 S.W.2d at 83 (holding Missouri may regulate special charter cities by prescribing policies of general state-wide application).  The City claims that because §§ 188.205-.215 do not expressly forbid cooperating with the United States to provide travel-subsidy programs, BB61 is not in conflict with the statute.  But the City leaves out that the "travel-subsidy program" assists and encourages out-of-state abortions, in direct contravention of Missouri law.  Because §§ 188.205-215 apply to the City and directly conflict with BB61, BB61 "must give way to" state law.  *Grimes*, 630 S.W.2d at 692-93.

## II. The State will be irreparably harmed absent an injunction.

Defendants also argue that this Court should not issue a preliminary injunction because the State's alleged harm is only "speculative." Opp. at 21. Not so. The U.S. Supreme Court clearly states that "any time" the State is prevented "from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (*citing New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977); *cf. 1-800-411-Pain Referral Service, LLC v. Otto*, 744 F.3d 1045, 1053-54 (8th Cir. 2014); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."); *LaVanchy v. Ziegler*, 2022 WL 263548, at *5 (W.D. Mo. Jan. 27, 2022); *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) ("Prohibiting the State from enforcing a statute properly passed…, particularly where the State has shown a strong likelihood that the statute is not constitutionally infirm, would irreparably harm the State."). Furthermore, the State has a compelling interest in protecting the life of unborn children, and failure to procure preliminary injunctive relief means that persons will lose those lives. *See State v. Knapp*, 843 S.W.2d 345, 347-48 (Mo. banc 1992) (unborn children are "persons" under involuntary manslaughter statute). "That [Missouri] may not employ a duly enacted statute to help prevent these injuries constitutes irreparable harm." *Maryland v. King*, 567 U.S. at 1303.

The City also argues that an injunction here would do "little or nothing more than order the defendants to obey the law" and so is "not specific enough." Opp. p.18. Not so. Here, there are two conflicting laws—a State law and a municipal ordinance. The injunction here prohibits the City from acting in accordance with the municipal ordinance's dictates.

12

The City also argues that subsidization of interstate-travel costs related to abortion access does not indicate any abortion procedures are imminently occurring and that there has been no showing that the abortion procedures being performed would be those deemed unlawful under Missouri law. Opp. p.19. This is unconvincing. The City's purpose is to assist abortions that are not legal in the State of Missouri.[1]

### III. An injunction would be in the public interest, and the balance between the harm to the State and the harm to the Defendants favors the State.

The City claims that an injunction would not be in the public interest because the City has the more compelling interest—using ARPA funds to address unmet local public health needs. Opp. p.21. Not so.

An injunction is in the public interest if the public interest would be served by injunctive relief. *See Community of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 613 F. Supp. 2d 1140, 1145 (W.D. Mo. 2009). The public interest would be served by injunctive relief for two reasons. First, the State has an important interest in enforcing its laws. As duly enacted statutes, Sections 188.205-.215 are themselves a powerful expression of the public interest in Missouri. *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937); s*ee also Strange v. Searcy*, 574 U.S. 1145, 135 S. Ct. 940, 191 L. Ed. 2d 149 (2015) ("The equities and public interest…generally weigh in favor of enforcing duly enacted state laws."). Second, the State has an important interest in protecting unborn life, and failure to procure preliminary injunctive relief means that persons will lose their lives. *See State v. Knapp*, 843 S.W.2d 345, 347-

---

[1] *St. Louis City Board of Aldermen Meeting* at 43:28-43:57 (July 8, 2022) (online at https://www.youtube.com/watch?v=v9drECsh-Ww) ("[BB61] is…one of the most impactful things we can do right now knowing that we are in a state that has gone dark. And knowing that just because abortion is illegal in Missouri does not mean that abortions will stop. What it means is that people need logistical support…since they can't stay here locally anymore and get those services."); *id*. at 37:27-37:37 (""When choice has been taken away from so many people who can get pregnant, this bill allows that choice to be available.").

13

48 (Mo. banc 1992); § 1.205 ("The general assembly of this state finds that: (1) The life if each human being begins at conception; (2) Unborn children have protectable interests in life, health, and well-being […]."). The City fails to challenge this interest in their Opposition.

Contrary to Defendants' arguments, they have no interest in violating State law. *See Sch. Dist. of Kansas City*, 382 S.W.2d at 692-93 ("[A City] Charter must give way to…state laws in regard to governmental functions or general policies of statewide concern"); *Grimes*, 630 S.W.2d at 83 ("[T]he state has the right in the exercise of the police power to prescribe a policy of general state-wide application which applies to special charter cities.").

Defendants further argue that the City has a "strong public interest" in "guarding the First Amendment rights of Dr. Matifadza Hlatshwayo and ensuring the supremacy of federal law." Opp. at 23. The City does not have a strong public interest in protecting the First Amendment rights of Dr. Hlatshwayo because, as discussed above, no Defendant has a viable First Amendment claim. *See* Part I.B, *supra*. Likewise, because the State laws at issue here do not violate the federal Supremacy Clause, the Defendants have no interest in upholding that Clause either. *See* Part I.A, *supra*. Thus, this Court should issue a preliminary injunction because the public interest favors the State.

## **CONCLUSION**

For these reasons, this Court should grant the State's Motion for Preliminary Injunction.

Dated: September 6, 2022                                     Respectfully submitted,

**ERIC S. SCHMITT**
Missouri Attorney General

/s/ *Maddie M. Green*
D. John Sauer, #58721
    *Solicitor General*
Maria A. Lanahan, #65956
    *Deputy Solicitor General*
Maddie M. Green, #73724
    *Assistant Attorney General*
Office of the Attorney General
Supreme Court Building
207 W. High Street
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8870
(573) 751-0774 (fax)
John.Sauer@ago.mo.gov
Maria.Lanahan@ago.mo.gov
Maddie.Green@ago.mo.gov

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 6, 2022, a true and correct copy of the foregoing was filed with the Court's electronic filing system to be served by electronic methods on counsel for all parties entered in the case.

*/s/ Maddie M. Green*