# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| THE STATE OF MISSOURI ex rel. ERIC S. SCHMITT, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 4:22-cv-00789-AGF |
| v. | ) ) | |
| THE CITY OF ST. LOUIS, et al. | ) ) | |
| *Defendants*. | ) ) | |

# MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS OF COUNTERCLAIM PLAINTIFFS CITY OF ST. LOUIS AND DR. MATIFADZA HLATSHWAYO DAVIS

On August 17, 2022, Defendants/Counterclaim Plaintiffs the City of St. Louis ("City") and Dr. Matifadza Hlatshwayo Davis ("Counterclaim Plaintiffs") filed counterclaims against Plaintiff/Counterclaim Defendant State of Missouri ex rel. Eric S. Schmitt (the "State"). Answer and Counterclaims ("Ans. & CCs") (Dkt. #16). First, the City alleges that § 188.205, RSMo., violates the Supremacy Clause. Ans. & CCs pp.13-14. Second, the City and Dr. Hlatshwayo Davis allege that §§ 188.205-.215 are unconstitutionally overbroad and vague under the First Amendment. Ans. & CCs pp.14-19. Third, the City alleges that §§ 188.205-.215 violate article VI, §§ 16 and 19(a) of the Missouri Constitution. Ans. & CCs pp.19-20. As relief, Counterclaim Plaintiffs request that this Court declare invalid §§ 188.205-.215 and enjoin the Attorney General from enforcing those statutes. Ans. & CCs p.20. For the reasons discussed below, this Court should dismiss each of these counterclaims under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Rock Dental Arkansas PLLC v. Cincinnati Ins. Co.*, 40 F.4th 868, 870 (8th Cir. 2022) (cleaned up). "When determining whether a claim is facially plausible, [courts] accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Cole v. Homier Distribut. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010).

"When interpreting a [federal] statute, [courts] begin by analyzing the statutory language, assuming that the ordinary meaning of that language accurately expresses the legislative purpose." *Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 394 (8th Cir. 2022) (cleaned up). In determining statutory meaning, courts consider the whole statute. *Id*.

1

When interpreting a Missouri statute or the Missouri constitution, this court applies Missouri's rules of statutory construction. *See Wireco WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 991 (8th Cir. 2018). In Missouri, "[t]he primary goal of statutory interpretation is to give effect to legislative intent, which is most clearly evinced by the text of the statute." *Cooperative Home Care, Inc. v. City of St. Louis*, 514 S.W.3d 571, 583 (Mo. 2017). "[A] word not defined in a statute is given its ordinary meaning pursuant to the dictionary." *Gross v Parson*, 624 S.W.3d 877, 884 (Mo. 2021). If one interpretation of a statute is constitutional and another interpretation is not, courts presume the General Assembly intended the constitutional one. *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 838-39 (Mo. 1991). Missouri statutes are interpreted "as a whole." *See Roland v. St. Louis City Bd. of Elec. Comm'rs*, 590 S.W.3d 315, 323 (Mo. 2019).

## ARGUMENT

### I.  This Court should dismiss Counterclaim I.

This Court should dismiss Counterclaim I because there is no private right of action under the Supremacy Clause and, even if there were, § 188.205 does not violate the Supremacy Clause.

#### A.  There is no private right of action under the Supremacy Clause.

This Court should dismiss Plaintiffs' Counterclaim I, which alleges a violation of the Supremacy Clause, because there is no private right of action under the Supremacy Clause. *See Armstrong v. Exceptional Child Center, Inc.* 575 U.S. 320, 326 (2015) ("[T]he Supremacy Clause does not confer a right of action[.]"). Thus, Counterclaim I fails to state a claim on which relief can be granted.

#### B.  Section 188.205 does not violate the Supremacy Clause.

"Federal preemption of state law can occur" in three ways: express preemption, field preemption, or conflict preemption. *Soo Line R.R. Co. v. Werner Enter.*, 825 F.3d 413, 420 (8th

2

Cir. 2016). By arguing that § 188.205 "conflicts with federal law or stands as an obstacle to the accomplishment of the full purposes and objectives of Congress" in passing ARPA, Ans. & CCs p.13, ¶ 39, the City claims that § 188.205 is conflict preempted. *Soo Line*, 825 F.3d at 420. "Whether a particular state law constitutes a sufficient obstacle and, therefore, is preempted "is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Soo Line*, 825 F.3d at 420. But courts "start with the assumption that the historic police powers of the States were not to be superseded by" federal law "unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *see also Soo Line*, 825 F.3d at 420. The States' police powers are those that "state[s] did not surrender when becoming a member of the Union under the Constitution," including "such reasonable regulations…as will protect the public health and the public safety." *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905).

Here, the City claims that that State may not use § 188.205 to enjoin the City from expending ARPA funds pursuant to BB61, because Congress intended the Coronavirus Local Fiscal Recovery Fund (CLFRF) be used for whatever local governments wished (subject to certain federal restrictions), without regard to whether such use of the funds violated State law. Ans. & CCs pp.13-14. Though the City's Counterclaim I does not explain what part of federal law § 188.205 conflicts with, the City presumably claims that § 188.205 conflicts with ARPA, 42 U.S.C. § 803(c)(1). *See* MTD Memo. p.5 (Dkt. #13). Not so.

Under BB61 § 1, the City appropriated $1 million in ARPA funds to establish a "Reproductive Equity Fund" "to provide access to abortion through logistical support including but not limited to the funding of childcare, transportation, and other logistical support needs." Petition Ex. p.40 (Dkt. No. 6-1). Under BB61 § 2, the City appropriated $500,000 in ARPA funds

3

to establish a "Reproductive Equity Fund" that "will support infrastructure and operations for organizations already providing direct services to reproductive healthcare access in the region including access to doulas and lactation support." BB61 § 2 fails to state that it will not support abortions or abortion logistical support. *Id*. p.41. Both §§ 1 and 2 violate § 188.205, which states:

> [i]t shall be unlawful for any public funds to be expended for the purpose of performing or assisting an abortion, not necessary to save the life of the mother, or for the purpose of encouraging or counseling a woman to have an abortion not necessary to save her life.

ARPA § 803(c)(1) places limits ARPA fund use, stating that: "a metropolitan city…***shall only use the funds*** provided under a payment made under this section to cover costs incurred by the metropolitan city…by December 31, 2024," and only insofar as those costs fit within four limited provisions in § 803(c)(1)(A)-(D). 42 U.S.C. § 803(c)(1)(A)-(D). One of these provisions permits ARPA funds to cover costs "to respond to the public health emergency with respect to [COVID] or its negative economic impacts." 42 U.S.C. § 803(c)(1)(A). In response to this statute, the U.S. Department of the Treasury ("Treasury") issued regulations governing ARPA implementation. *Coronavirus State and Local Fiscal Recovery Funds*, 87 Fed. Reg. 4338, 4338 (2022). In 31 CFR § 35.6(b), the regulations clarify 42 U.S.C. § 803(c)(1)(A) by defining what constitutes "[r]esponding to the public health emergency or its negative economic impacts."

In this case, there is a presumption that 42 U.S.C. § 803(c)(1) does not preempt § 188.205, RSMo, because § 188.205 concerns abortion regulation—part of Missouri's police powers "not surrender[ed] when becoming a member of the Union under the Constitution" *See Jacobson*, 197 U.S. at 25; *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2284 (2022) ("The Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion."); MTD Memo. p.10 (admitting States have power to regulate abortion). Section 188.205, RSMo, also is part of Missouri's police powers because it relates to "public health and safety" for pregnant

4

women and unborn children.  *See Jacobson*, 197 U.S. at 25; *see also* § 188.010, RSMo.

But even if there was no presumption against § 188.205's preemption, it would not be preempted because it does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in 42 U.S.C. § 803(c)(1).  *See Soo Line*, 825 F.3d at 420.  Nothing in § 803(c)(1) indicates that municipalities need not abide by State (or local) law when spending ARPA funds.  Further, § 803(c)(1) and (c)(1)(A) lacks any purpose permitting local governments "maximum flexibility to spend the funds in a manner that suits the needs of that particular community," *see* Ans. & CCs p.10, because they are structured as *restrictions within a restriction*.  First, § 803(c)(1) *restricts* ARPA funds to "cover[ing] costs incurred by the…city…by December 31, 2024."  Second, § 803(c)(1)(A)-(D) *further restricts* what "costs incurred" may be reimbursed with ARPA funds to (among other enumerated things) costs incurred to respond to the COVID-19 public health emergency or its negative economic impacts.  Nothing in the statute suggests that the City may break State law or its own ordinances when spending ARPA funds.

The City argues the contrary, pointing to regulations in 31 CFR 35.6(b), 31 CFR 35.12(d), and 87 Fed. Reg. 4340, to no avail.  *See* Ans. & CCs pp.10-11; MTD Memo. p.2.  First, Treasury's regulations do not express Congress's purposes because Treasury, not Congress, wrote them.  *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496 (2022) ("Congress expresses its intentions through statutory text passed by both Houses and signed by the President (or passed over a Presidential veto).").  Second, none of these regulations shows that even Treasury intended local governments use ARPA funds in a way that would violate State or local law.  For instance, 31 CFR 35.6(b) simply defines the phrase "[r]esponding to the public health emergency or its negative economic impacts," as used in 42 U.S.C. § 803(c)(1)(A).  Further, 31 CFR 35.12(d) does not prohibit the State from regulating the use of ARPA funds.  Rather, 31 CFR 35.12(a)-(d) governs

5

welfare payments from States to local governments under 42 U.S.C. § 603(b)—not ARPA payments. Finally, 87 Fed. Reg. 4340 does not permit cities to violate their State's laws in spending ARPA funds. Rather, it clarifies that the rule "provide[s] substantial flexibility…to help state, local, and Tribal governments adapt…and tailor their response…to the particular local needs of their communities." Not only are the particular local needs of Missourians informed by the General Assembly's statutes—they also expressly exclude abortions. *See* Mo. Const. art. VI, § 19(a) (Charter cities cannot violate Missouri statutes); § 188.010(2) ("[T]he state and all of its political subdivisions are a 'sanctuary of life' that protects pregnant women and their unborn children"); §§ 188.205-.215. Further, the City's arguments would make 87 Fed. Reg. 4340 violate its own purpose—to help local *and state* governments adapt and tailor their response to the particular local needs of their communities—by *prioritizing* local over State government. Thus, this Court should dismiss Counterclaim I for failure to state a claim.

## II. This Court should dismiss Counterclaim II because §§ 188.205-.215 are not unconstitutionally overbroad or vague.

In Counterclaim II, the City and Dr. Hlatshwayo Davis allege that §§ 188.205-.215 violate the First Amendment because the terms "encourage" and "assist" in those statutes are unconstitutionally vague and overbroad. Ans. & CCs pp.14-19; MTD Memo. p.9. This Court should dismiss this Counterclaim for failure to state a claim on which relief can be granted.

**A.    Overbreadth.** With respect to overbreadth, Counterclaim Plaintiffs claim that §§ 188.205-.215 are so unclear, and the State's understanding of their application is so sweeping, that they prohibit protected First Amendment activity, and so this Court should declare that they are unconstitutional in their entirety. Ans. & CCs pp.14-19; MTD p.9. The City makes several overbreadth arguments: the State's construction of "assist" or "encourage" (1) prohibits the City from allowing protests, speeches, and demonstrations advocating abortions in its parks and similar

6

spaces open to the public; (2) prohibits the City from processing permits for demonstrations, protests, or speeches about abortion in spaces open to the public; (3) prohibits health advocates and officials from using online forums for hearings, debate, and community outreach; and (4) prohibits the City from providing information and medical advice regarding interstate access to legal abortion or expressing that a woman has a right to bodily reproductive autonomy.  Ans. & CCs pp.16-17; *cf.* MTD Memo. pp.11-12.  This is a facial challenge because Counterclaim Plaintiffs allege that §§ 188.205-.215 violate the First Amendment in *other situations*, not that §§ 188.205-.215 violate the First Amendment *as applied to BB61*.  *See also* MTD Memo. pp.11-12 ("[T]he State's construction of 'assist' or 'encourage' here may permit it to bring civil actions prohibiting [protected 1st Amendment activities]").

Under the First Amendment, courts may facially invalidate a law for being "impermissibly overbroad" only if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Sisney v. Kaemingk*, 886 F.3d 692, 698-99 (8th Cir. 2018); *see also Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 791 (8th Cir. 2004).  That said, the U.S. Supreme Court "especially…discourage[s]" facial challenges on First Amendment overbreadth grounds because "they entail a further departure from the norms of adjudication in federal courts" such as "relaxing familiar requirements of standing, [thus] allow[ing] a determination that the law would be unconstitutionally applied to different parties and different circumstances than those at hand."  *Klobuchar*, 381 F.3d at 791.

"[A] party invoking federal jurisdiction" for a First Amendment facial overbreadth claim "has the burden of establishing standing," including "actual injury."  *Id*.  "With regard to a First Amendment facial-overbreadth claim, actual injury can exist…as long as the plaintiff is objectively reasonably chilled from exercising his First Amendment right to free expression in

7

order to avoid enforcement consequences." *Id*.

Here, neither Counterclaim Plaintiff has an actual injury, as required for standing. This is because §§ 188.205-.215 prohibit unprotected government actions and speech, not protected private speech. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 468 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."). Section 188.205 clearly prohibits *government* actions and speech by prohibiting public funds from being "expended for the *purpose* of performing or assisting an abortion" or "for the *purpose* of encouraging or counseling a woman to have an abortion not necessary to save her life." This does not restrict protected private speech because the statute addresses only the government's purpose in expending funds. Section 188.210 also limits only government conduct and speech because it prohibits public employees acting as such (not private citizens) from performing or assisting abortions and encouraging or counseling a woman to have an abortion. Section 188.215 only limits government conduct and speech because it prohibits the government from using public facilities to perform or assist abortions and from using public facilities for the purpose of encouraging or counseling a woman to have an abortion. To the extent these statutes could be read two different ways—one way that unlawfully prohibits protected private speech and another that implicates only unprotected speech—this Court should read the statute in the way that makes it constitutional. *See Blaske*, 821 S.W.2d at 838-39.

Another independent reason §§ 188.205-.215 do not violate the First Amendment is because governments may restrict even private individuals' use of public funds and speech relating to public funds without violating private free-speech rights. *See, e.g.*, *Rust v. Sullivan*, 500 U.S. 173, 181, 198-99 (1991) (holding that individuals voluntarily employed for a Title X project could be prohibited from counseling and referring women to have abortions without violating the First

8

Amendment). So too here. Thus, Counterclaim Plaintiffs have no standing to bring a facial overbreadth challenge.

Even if Counterclaim Plaintiffs brought an as-applied challenge (they did not, so this Court should not consider such an argument), this too would fail. As applied here, using §§ 188.205-.215 to prevent Counterclaim Plaintiffs from enforcing BB61 does not violate the First Amendment. BB61 § 1 requires the City to establish a Reproductive Equity Fund to pay for logistical support for abortions. Petition Ex. p.40 (Dkt. #6-1). BB61 § 2 requires the City to establish a Reproductive Equity Fund for "infrastructure and operations for organizations already providing direct services to support reproductive healthcare access in the region." Pet. Ex. p.41. The fact that §§ 188.205-.215 prohibit Counterclaim Plaintiffs from using BB61 §§ 1 and 2 to fund abortion assistance, encouragement, or counseling with ARPA funds does not violate the First Amendment. *See Rust*, 500 U.S. at 198-99.

Finally, even assuming Counterclaim Plaintiffs could bring a facial challenge to §§ 188.205-.215 (they cannot, *see supra*), it would fail because they have not shown that a "substantial number of [§§ 188.205-.215's] applications are unconstitutional, judged in relation to [their] plainly legitimate sweep." *Sisney*, 886 F.3d at 698-99. Each statutory section—188.205, 188.210, and 188.215—must be analyzed separately because each is expressly severable from the others. *See* § 188.018, RSMo. The only applications Counterclaim Plaintiffs suggest are unconstitutional are that the State could use the terms "assist" and "encourage" in §§ 188.205-.215 to prohibit (1) private persons from using public fora, such as City parks, for protests, speeches, and gatherings that support abortion; (2) the City from processing permits for demonstrations, (3) "advocacy by health advocates and officials" in their private capacity in "online forums used for hearings, debate, and community outreach efforts," or (4) providing information and medical

9

advice regarding interstate access to legal abortion or expressing that a woman has a right to bodily reproductive autonomy.  Ans. & CCs pp.16-17.

Counterclaim Plaintiffs' first, second, and third concerns do not implicate § 188.205 because § 188.205's text neither prohibits private persons from using public fora, including online fora, for speeches and demonstrations nor prohibits the City from permitting citizens to demonstrate in public parks.  This is because simply issuing a permit does not constitute government speech or government endorsement.  *See Shurtleff v. Boston*, 142 S. Ct. 1583, 1592 (2022).  These three concerns do not implicate § 188.210 because § 188.210's text only prohibits speech by public employees "within the scope of [their] employment"—not private speech.  And finally, these concerns do not implicate § 188.215.  Section 188.215 prohibits public facilities from being used for performing abortions or assisting abortions.  This does not violate the First Amendment because it implicates action, not speech.  *See Nat'l Instit. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2372 (2018) (First Amendment protects speech, not conduct).  In the alternative, even if it is speech, it is unprotected government speech.  *See Pleasant Grove*, 555 U.S. at 468.  To the extent § 188.215 prohibits government from using a public facility for the purpose of encouraging or counseling a woman to have an abortion not necessary to save her life, this is not protected speech because it is government speech.  *Pleasant Grove*, 555 U.S. at 468; *see also Rust*, 500 U.S. at 198-99.

Counterclaim Plaintiffs' fourth concern—that the State could use the terms "assist" and "encourage" in §§ 188.205-.215 to prohibit private persons from providing information and medical advice regarding interstate access to legal abortion or expressing that a woman has a right to bodily reproductive autonomy—fails because §§ 188.205-.215 do not prohibit private speech, only certain types of government speech.  But even if this Court did find that the types of speech

10

prohibited by §§ 188.205-.215 include speech protected by the First Amendment, these instances would not represent a "substantial number of [§§ 188.205-.215's] applications [that] are unconstitutional, judged in relation to [their] plainly legitimate sweep." *Sisney*, 886 F.3d at 698-99. Therefore, this is an insufficient basis on which to facially invalidate the statute. For the reasons discussed *supra*, this Court should dismiss Counterclaim II's overbreadth claims for failure to state a claim on which relief can be granted.

      **B.**    **Vagueness.** Counterclaim II also claims that §§ 188.205-.215 are unconstitutionally vague. Counterclaim Plaintiffs allege that they "are unable to discern, based on the language of Chapter 188…how they may conduct themselves…and in what manner they may or may not speak on abortion-related matters." Ans. & CCs p.18.

      "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304 (2008). The City cannot bring this challenge because cities do not have due-process rights. *Committee of Educ. Equality v. State*, 878 S.W.2d 446, 450 n.3 (Mo. 1994) (political subdivisions are not considered "persons" with due-process rights); *see also Bd. of Educ. of City of St. Louis v. Mo. State Bd. of Educ.*, 271 S.W.3d 1, 14 (Mo. banc 2008) (same).

      Courts first consider as-applied vagueness challenges, and "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of vagueness of the law." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010). And a plaintiff "certainly cannot [complain of vagueness] based on the speech of others." *Id*. at 20. "[W]hen a statute interferes with the right of free speech …, a more stringent vagueness test" applies, but "perfect clarity and precise guidance have never been required." *Id*. at 19. So long as a statute does not "require [] untethered, subjective judgments," it is not unconstitutionally vague. *Holder*, 561 U.S. at 21.

11

An as-applied vagueness challenge on the basis of BB61 § 1—which instructs the City "to provide access to abortion through logistical support"—fails because BB61's mandate clearly constitutes "assisting" an abortion under § 188.205, per the dictionary definition of "assist." *See Holder*, 561 U.S. at 18-19 (vagueness as-applied standard); *Assist*, Webster's Third New International Dictionary 132 (2002) ("assist" means "to give support or aid"); *Gross v Parson*, 624 S.W.3d 877, 884 (Mo. 2021) (undefined statutory terms given dictionary definition).  An as-applied vagueness challenge on the basis of BB61 § 2—which instructs the City to "support infrastructure and operations for organizations already providing direct services to support reproductive healthcare access in the region" without prohibiting funding performing, assisting, encouraging, or counseling abortions—also fails.  The State has sued to prevent the City from implementing BB61 § 2 in a way that violates §§ 188.205-.215.  To the extent the City wishes to use BB61 § 2 to issue ARPA funds for the purpose of performing, assisting, encouraging, or counseling abortions, this "conduct [] is clearly proscribed" by §§ 188.205-.215.  *See Holder*, 561 U.S. at 18-19.  Thus, the City's void-for-vagueness challenge fails.

Because Counterclaim Plaintiffs' actions through BB61 are clearly proscribed by §§ 188.205-.215, they cannot bring a facial challenge.  *Holder*, 561 U.S. at 18-19.  But even if they could, their vagueness facial challenge fails because the terms they allege are vague ("encourage" and "assist") do not "require [] untethered, subjective judgments."  *See Holder*, 561 U.S. at 21; *see also Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 958 (8th Cir. 2019) (applying this rule to undefined statutory terms).  "[T]he mere fact that close cases can be envisioned" does not "render[] a statute vague."  *Williams*, 553 U.S. at 305.  For instance, in *Holder*, Court held the terms "training" and "expert advice or assistance" did not require "untethered, subjective judgments."  561 U.S. at 21.  So too here.  "Encourage" and "assist" have dictionary definitions

12

that factfinders can readily apply.  *See Encourage*, Webster's Third New International Dictionary 747 (2002) ("encourage" means "to spur on: stimulate" or "to give help or patronage to: foster"); *id*. at 132 ("assist" means "to give support or aid").

Contrary to Counterclaim Plaintiffs' arguments in their Memo in Support of their Motion to Dismiss, the Eighth Circuit's prior case, *Reproductive Health Services v. Webster* (*Webster I*), does not control.  851 F.2d 1071 (8th Cir. 1988); MTD Memo. pp. 11-12.  In *Webster I*, the Eighth Circuit held that §§ 188.205-.215's restrictions on using public funds, public facilities, and public employees to "encourage or counsel" a woman to have an abortion were void for vagueness.  851 F.2d at 1077.  The Supreme Court vacated this holding with respect to § 188.205 in *Webster v. Reproductive Health Services* (*Webster II*). 492 U.S. 490, 512-13 (1989).  Thus, *Webster I* does not control this Court's holding with respect to § 188.205, or with respect to § 188.205's prohibition on *assisting* abortions, which *Webster I* did not address.

Next, the State will address *Webster I*'s holding with respect to §§ 188.210 and .215.  In *Webster I*, the Eighth Circuit held that the prohibition on "encouraging or counseling" implicated "both first and fourteenth amendment rights of both physicians and their patients:  the right to disseminate and receive information about abortion, and the right to knowingly and intelligently choose and abortion after consulting a physician."  851 F.2d at 1078.  It therefore applied the following vagueness test to "encouraging"[1]:  "whether the statute is sufficiently precise to serve the goals of fair notice and fair enforcement."  *Id*. at 1077-78.  But the law has changed in multiple ways since *Webster I*.  First, the Supreme Court has since clarified that vagueness is properly determined as-applied first, and a plaintiff whose conduct is not clearly proscribed cannot

---

[1]The Counterclaim does not allege that "counsel" is vague, so the State focuses on "encourage."

13

complain the law is vague as applied to the conduct of others. *Holder*, 561 U.S. at 18-19. Because *Webster I* did not address whether the plaintiffs' conduct was clearly proscribed, it incorrectly reached the question whether the law was facially vague. *See id*.

Second, *Webster I* was decided before *Holder*'s determination that the terms "training" and "expert advice or assistance" did not require "untethered, subjective judgments" and therefore were not unconstitutionally vague. *Id*. Because *Holder*'s guidance on what constituted "untethered, subjective judgments" would have changed the outcome in *Webster I*, *Webster I*'s holding that "encourage" is unconstitutionally vague in §§ 188.210 and .215 does not control the outcome of this case. This Court's actions are governed, first and foremost, by the Supreme Court, not the Eighth Circuit. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 942 (2015) (federal courts are bound by the Supreme Court's holdings); *United States v. Taylor*, 803 F.3d 931, 933 (8th Cir. 2015) (per curiam) (Eighth Circuit panels are not bound by prior Eighth Circuit precedent "when the earlier panel decision is cast into doubt by an intervening Supreme Court decision").

**III.    Sections 188.205-.215 do not violate article VI, sections 16 or 19 of the Missouri Constitution.**

**A.    Article VI, section 16.** This Court should dismiss the City's claim that §§ 188.205-.215 violate art. VI, § 16 of Missouri's Constitution, which states:

> Any municipality…of this state may contract and cooperate…with the United States, for the planning, development, construction, acquisition, or operation of any public improvement or facility, or for a common service, in the manner provided by law.

Sections 188.205-.215 do not violate article VI, § 16 because that constitutional section (1) does not permit the City to violate State law and (2) here, there is no "contract."

Article VI, section 16 does not permit the City to violate Missouri law because it only permits municipalities to contract and cooperate with the United States *in the manner provided by law*. Art. VI, § 16. The "manner provided by law" is set forth in § 70.220, RSMo, *Sch. Dist. of*

14

*Kansas City v. Kansas City*, 382 S.W.2d 688, 692 (1964), which states that the "contract or cooperative action made and entered into by such municipality…shall be within the scope of the powers of such municipality." Thus, a municipality must follow laws passed by the General Assembly. *Id*. at 692-93 ("[City] Charter must give way to…state laws in regard to governmental functions or general policies of statewide concern"); *City of St. Louis v. Grimes*, 630 S.W.2d 82, 83 (Mo. 1982) ("[T]he state has the right in the exercise of the police power to prescribe a policy of general state-wide application which applies to special charter cities."); Mo. Const. art. VI, § 19(a) (Charter City's powers cannot conflict with Missouri statutes).

Second, §§ 188.205-.215 do not violate article VI, section 16 because, here, the City does not allege that it made a "contract" with the United States, as required by both article VI, section 16 and § 70.220, RSMo. Thus, this Court should dismiss the article VI, section 16 counterclaim.

   **B.**  **Article VI, section 19(a).** The City claims that §§ 188.205-.215 violate article VI, section 19(a) of the Missouri Constitution, which states:

> Any city which…has adopted a charter for its own government[] shall have all powers which the general assembly…has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied…by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

But article VI, section 19(a) does not permit a Charter city to violate laws passed by the General Assembly—it only gives powers not "limited or denied…by statute." *See also Kansas City*, 382 S.W.2d at 692-93 (city's "Charter must give way to…state laws"); *Grimes*, 630 S.W.2d at 83 (Missouri may regulate special charter cities by prescribing policies of general state-wide application). Because §§ 188.205-.215 apply to the City, this Court should dismiss the City's article VI, section 19(a) claim for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons stated *supra*, this Court should dismiss the Counterclaims in their entirety.

Respectfully submitted,

**ERIC S. SCHMITT**
Missouri Attorney General

/s/ *Maria A. Lanahan*
D. John Sauer, #58721
   *Solicitor General*
Maria A. Lanahan, #65956
   *Deputy Solicitor General*
Maddie M. Green, #73724
   *Assistant Attorney General*
Office of the Attorney General
Supreme Court Building
207 W. High Street
P.O. Box 899
Jefferson City, MO 65102
(573) 751-8870
(573) 751-0774 (fax)
John.Sauer@ago.mo.gov
Maria.Lanahan@ago.mo.gov
Maddie.Green@ago.mo.gov

*Counsel for Petitioner/Plaintiff and Counterclaim Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 7, 2022, a true and correct copy of the foregoing was filed with the Court's electronic filing system to be served by electronic methods on counsel for all parties entered in the case.

/s/ *Maria A. Lanahan*